Jace REED, Appellant,

v.

UNIVERSITY OF NORTH DAKOTA,
et al., Respondents.

No. C5–95–1357.

Court of Appeals of Minnesota.

Jan. 30, 1996.

Review Denied March 28, 1996.

Paul V. Kieffer Austin & Abrams, Minneapolis, for Appellant.

Heidi Heitkamp, Attorney General, Sara B. Gullickson, Assistant Attorney General, Fargo, ND, for Respondents.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and FOLEY, JJ.*

## OPINION

KALITOWSKI, Judge.

Jace Reed appeals the district court's dismissal of personal injury claims against University of North Dakota (UND) Coaches John Gasparini and James Scanlan and its dismissal of personal injury and contract claims against UND.

## FACTS

UND is an arm of the sovereign State of North Dakota. In 1989, UND recruited Reed, a Grand Rapids High School student, to play college hockey. After being offered a scholarship, Reed signed a National Letter of Intent and played hockey for two years at UND.

On September 15, 1991, as part of UND's pre-season conditioning, Reed participated in a 10–kilometer charity road race sponsored by the North Dakota Association for the Disabled (NDAD). The race took place in North Dakota. During the race, Reed collapsed due to dehydration and suffered extensive damage to vital organs. As a result, Reed incurred substantial medical expenses.

Reed initially filed suit in North Dakota Federal District Court against UND, Coach Gasparini, Coach Scanlan, Coach Craig Perry, and athletic trainer Chad Peterson, but later voluntarily dismissed that suit. Reed then filed a personal injury suit in Minnesota district court in Grand Rapids against NDAD and the five defendants named in the federal action, and breach of contract claims against UND. Scanlan and Gasparini were personally served while in Minnesota. All six defen-

dants moved to dismiss on jurisdictional grounds.

Following a June 20, 1994, hearing, the district court dismissed NDAD for lack of personal jurisdiction. The court allowed Reed to complete discovery on the issues of immunity, jurisdiction, and choice of law as applied to the remaining five defendants. Reed subsequently filed suit against the same six defendants in North Dakota state court. The North Dakota court stayed the action pending an outcome in this case.

In opposition to defendants' motions to dismiss, Reed alleged that Gasparini and Scanlan had personal and professional contacts with the State of Minnesota, and that UND, and in particular the UND hockey program, had numerous contacts with Minnesota.

In January of 1995, the remaining five defendants renewed their motions to dismiss, presenting arguments on lack of jurisdiction, forum non conveniens, comity, choice of law, sovereign immunity, and discretionary immunity. Following a hearing, the district court, on May 22, 1995, dismissed claims against Gasparini and Scanlan on forum non conveniens grounds. The court also dismissed claims against Perry, Peterson, and UND for lack of personal jurisdiction. Reed appeals dismissal of the claims against Gasparini, Scanlan, and UND.

## ISSUES

1. Did the district court err in concluding North Dakota law applies to this case?

2. Should the courts of Minnesota exercise jurisdiction over UND and its agents for personal injuries that occurred exclusively in North Dakota?

3. Did the district court err in concluding that Reed's contract claims fail as a matter of law?

## ANALYSIS

■ Initially, we note that the district court addressed jurisdictional questions regarding UND and UND's agents Gasparini

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

and Scanlan separately. Reed, however, conceded at oral argument that he is suing Gasparini and Scanlan only in their capacities as coaches of UND and therefore as agents of UND and the State of North Dakota. A principal is liable for the act of its agent committed within the scope of agency. *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 535 (Minn.1992). Accordingly, we apply the principles of law discussed below in sections I and II to both UND and its agents Gasparini and Scanlan.

The district court dismissed personal injury claims against UND for lack of personal jurisdiction and against Gasparini and Scanlan on the basis of forum non conveniens. We conclude, however, that there are overriding policy reasons for addressing the dismissals on the alternate grounds presented to the district court of choice of law and comity. The district court ruled that North Dakota law applies in this action, but did not address the issue of comity.

## I.

The district court determined that North Dakota law, rather than Minnesota law, applies to this action. We agree.

■ The first step in a choice of law analysis is to determine whether there is an actual conflict between the states' laws. *Jepson v. General Casualty Co. of Wisconsin*, 513 N.W.2d 467, 469 (Minn.1994). In 1994, North Dakota prospectively abolished sovereign immunity for the state and its agents with respect to tort liability. *Bulman v. Hulstrand Constr. Co., Inc.*, 521 N.W.2d 632, 639 (N.D.1994). Minnesota abolished sovereign immunity for torts many years earlier. *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597, 603 (1975). Because Reed's claims arose before North Dakota abolished sovereign immunity in *Bulman*, the laws of Minnesota and North Dakota conflict with respect to sovereign immunity.

The second step in a choice of law analysis is to determine whether there are sufficient contacts with a state to make application of its law consistent with the requirements of due process. *Jepson*, 513 N.W.2d at 469. Minnesota has adopted the United States Supreme Court test for sufficient contacts, holding that

> for a state's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, *such that choice of its law is neither arbitrary nor fundamentally unfair.*

*Jepson*, 513 N.W.2d at 469–70 (emphasis added) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981)). While UND and its agents have extensive contacts with Minnesota, those contacts are completely unrelated to Reed's negligence claims *arising in North Dakota.* Because the contacts here are unrelated, applying Minnesota law is arguably arbitrary and unfair. To the contrary, sufficient contacts clearly exist with North Dakota to make the application of North Dakota law constitutional.

■ The third step in a choice of law analysis involves balancing the factors of *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973). *Jepson*, 513 N.W.2d at 470. Assuming sufficient Minnesota contacts exist to meet the requirements of due process, application of the five *Milkovich* factors leads us to conclude that North Dakota law applies to this case.

The first *Milkovich* factor, "predictability of result," has little bearing on a tort case. *Jepson*, 513 N.W.2d at 470. The second *Milkovich* factor, "maintenance of interstate order," weighs heavily in favor of applying North Dakota law. *See id.* As noted in *Jepson*

> we are primarily concerned with whether the application of Minnesota law would manifest disrespect for North Dakota's sovereignty or impede the interstate movement of people and goods.

*Jepson*, 513 N.W.2d at 471. First, we note the disrespect inherent in applying Minnesota law to enable an action to be brought against a sovereign entitled to immunity under its own law. In addition, Reed's decision to commence and voluntarily dismiss an action in federal district court and bring similar actions in Minnesota and North Dakota state courts, at the very least gives the appearance

of forum shopping. Forum shopping is not encouraged in Minnesota because it frustrates the maintenance of interstate order. *Id.* at 471–72.

The third *Milkovich* factor is "simplification of the judicial task." *Id.* at 472. This factor also weighs in favor of applying North Dakota law. Applying Minnesota sovereign immunity law to actions of North Dakota's sovereign would be complicated because collection of any judgment awarded in Minnesota would require a North Dakota legislative appropriation. In addition, UND has raised discretionary immunity as a defense. The application of Minnesota law on discretionary immunity to actions of North Dakota's sovereign that occurred in North Dakota creates additional difficulty.

The fourth *Milkovich* factor considers the "advancement of the forum's governmental interest." *Id.* at 470. Although Minnesota places great value in compensating tort victims, an interest in maintaining interstate order may override an interest in compensating tort victims. *Id.* at 472.

Under the fifth *Milkovich* factor, we consider which forum has the better rule of law. *Id.* We conclude that Minnesota has the better rule of law on sovereign immunity, especially in light of North Dakota's recent change in law to accord with Minnesota law. This factor, however, only applies when the other four factors are not dispositive. *Myers v. Government Employees Ins. Co.,* 302 Minn. 359, 368, 225 N.W.2d 238, 244 (1974). Here, the other factors lead us to conclude that North Dakota law applies. Accordingly, we affirm the district court's determination that North Dakota law applies to this matter.

## II.

The district court dismissed personal injury claims against UND for lack of personal jurisdiction and against Gasparini and Scanlan on the basis of forum non conveniens. Because we conclude dismissal was proper based on the doctrine of comity we need not address whether dismissal was also proper on alternative grounds. *See Myers Through Myers v. Price,* 463 N.W.2d 773, 775 (Minn. App.1990) (appellate court will affirm district court if district court's decision can be sus-

tained on any grounds), *review denied* (Minn. Feb. 4, 1991).

■ The doctrine of comity demands that a court exercise extreme care and restraint in taking an action that may interfere with the jurisdiction of a foreign court. *Medtronic, Inc. v. Catalyst Research Corp.,* 518 F.Supp. 946, 955 (D.Minn.1981), *aff'd* 664 F.2d 660 (8th Cir.1981). Numerous courts have applied the doctrine of comity for the purpose of respecting another state's sovereign immunity. *See Wells v. Vincennes Univ.,* 982 F.2d 1147, 1150–52 (7th Cir.1992); *Lee v. Miller County,* 800 F.2d 1372, 1375 (5th Cir.1986); *University of Iowa Press v. Urrea,* 211 Ga.App. 564, 440 S.E.2d 203, 204 (1993); *Schoeberlein v. Purdue Univ.,* 129 Ill.2d 372, 135 Ill.Dec. 787, 792, 544 N.E.2d 283, 288 (1989); *Clement v. State,* 524 N.E.2d 36, 43 n. 3 (Ind.Ct.App.1988); *Newberry v. Georgia Dep't of Indus. & Trade,* 286 S.C. 574, 336 S.E.2d 464, 465 (1985).

The United States Supreme Court has held that while nothing in the Federal Constitution requires a forum to recognize the sovereign immunity of another state, the forum may do so as a matter of comity. *Nevada v. Hall,* 440 U.S. 410, 426, 99 S.Ct. 1182, 1191, 59 L.Ed.2d 416 (1979). In *Nevada v. Hall,* California residents were injured in California by a vehicle driven by an employee of the University of Nevada. *Id.* at 411, 99 S.Ct. at 1183–84. After the injured plaintiffs successfully sued in California, Nevada appealed, asserting its sovereign immunity. *Id.* at 413–14, 99 S.Ct. at 1184–85. Although the Supreme Court allowed California to exercise jurisdiction over Nevada, the Court stated that it "presumed that the States intended to adopt policies of broad comity toward one another." *Id.* at 425, 99 S.Ct. at 1190–91. The Court cautioned that

[i]t may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability.

*Id.* at 426, 99 S.Ct. at 1191. The fact that the accident occurred in California was relevant to the court's decision to allow California to exercise jurisdiction over Nevada. *Id.*

at 424 n. 24, 426, 99 S.Ct. at 1190 n. 24, 1191. Accordingly, the majority opinion notes that

> [s]uits involving traffic accidents occurring outside of Nevada could hardly interfere with Nevada's capacity to fulfill its own sovereign responsibilities.

*Id.* at 424 n. 24, 99 S.Ct. at 1190 n. 24.

Unlike the facts in *Nevada v. Hall,* here we have plaintiffs suing North Dakota in a Minnesota court for actions that *occurred in North Dakota.* California necessarily had a stronger interest in providing a forum than Minnesota does in the present case. Further, the strong dissent of three Justices in *Nevada v. Hall,* plus the language from the majority opinion quoted above, leads us to conclude that had the accident occurred in Nevada the Supreme Court may have reached a different result.

Minnesota's interest is also lessened by the fact that North Dakota law applies to the present case. As the Supreme Court has stated in analyzing the application of forum non conveniens:

> There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial * * * in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil Corp v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

In conclusion, what we have here is an attempt to hale the North Dakota sovereign into Minnesota court and apply Minnesota law to negligence claims that arose in North Dakota. Such action not only raises concerns about interstate relations in a federal system, but also presents an affront to North Dakota's sovereignty since North Dakota law at the time of Reed's injury recognized the sovereign immunity of UND and its agents. Accordingly, we conclude Minnesota courts should not exercise jurisdiction here as a matter of comity. Therefore, we affirm the district court's conclusion that Reed's personal injury claims against UND and its agents should be dismissed.

## III.

Reed argues that UND breached either an oral contract or a written contract formed in Minnesota by the signing of the National Letter of Intent. We conclude the contract claims fail as a matter of law.

The district court applied the summary judgment standard in reviewing the contract claims because the court admitted matters outside the pleadings. *See* Minn. R.Civ.P. 12.02 (where a motion seeks dismissal for failure to state a claim upon which relief can be granted and matters outside the pleadings are presented to the court, the motion shall be treated as one for summary judgment). Summary judgment shall be granted where there is no genuine issue of material fact and either party is entitled to judgment as a matter of law. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

Reed alleges he entered into an oral contract with UND. He has not, however, identified a breach of a specific contractual provision despite being given the opportunity to do so through discovery. Reed presents no evidence that his agreement to play hockey was conditioned on an obligation by UND to provide health care. While Reed speculates that colleges have a duty to protect the health of their athletes, he fails to demonstrate how such duty is grounded in contract.

Further, assuming, as Reed contends, that the Letter of Intent is a written contract, Reed has again failed to identify a breach of any specific provision. Pursuant to the Letter of Intent, UND agreed to give Reed financial aid in exchange for his agreement to play hockey. Reed does not allege that UND breached this agreement and the Letter of Intent contains no provisions regarding UND's responsibilities regarding medical care. We therefore conclude the district court correctly determined that, when viewed in a light most favorable to Reed, the contract claims fail as a matter of law.

## DECISION

North Dakota law applies to this case arising from injuries sustained in North Dakota as a result of alleged acts of the North Dakota sovereign that took place in North

Dakota. Assuming jurisdiction exists to consider Reed's negligence claims against UND and its agents, the courts of Minnesota must decline the exercise of such jurisdiction as a matter of comity. Further, Reed's contract claims fail as a matter of law.

**Affirmed.**