1999 ND 25

Jace REED, Plaintiff and Appellant,

v.

UNIVERSITY OF NORTH DAKOTA, a North Dakota corporation, John Gasparini, James Scanlan, Craig Perry, Chad Peterson, and the North Dakota Association for the Disabled, Inc., a North Dakota corporation, Defendants and Appellees.

Civil No. 980123

Supreme Court of North Dakota.

Feb. 23, 1999.

Lauris A. Heyerdahl (argued) and Lisa M. Lamm (on brief), of Abrams & Smith, Minneapolis, MN, and Roger C. Jüstin (appearance), of Rinke Noonan Law Firm, St. Cloud, MN, for plaintiff and appellant.

Sara B. Gullickson, Special Assistant Attorney General, Fargo, ND, for defendants and appellees University of North Dakota, John Gasparini, James Scanlan, Craig Perry, and Chad Peterson.

Gerald J. Haga, of Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, ND, for defendant and appellee North Dakota Association for the Disabled, Inc.

MARING, Justice.

[¶ 1.] Jace Reed appealed a summary judgment dismissing his breach of contract claim against the University of North Dakota (UND) and his negligence and "in concert" claims against the North Dakota Association for the Disabled (NDAD). We hold res judicata bars Reed's breach of contract claim against UND, a valid release exonerates NDAD from liability for its alleged negligence, and, as a matter of law, NDAD did not act "in concert" with UND in committing a tortious act. We affirm.

## I

[¶ 2.] In 1989 UND offered Reed, a Minnesota high school student, a scholarship to play hockey at UND. Reed signed a national letter of intent and played hockey at UND for two years. On September 15, 1991, as part of UND's preseason hockey conditioning program, Reed ran in a ten kilometer charity road race sponsored by NDAD in Grand Forks. During the race, Reed became severely dehydrated and suffered extensive damage to his kidneys and liver. As a result, Reed required extensive medical care, including one kidney and two liver transplants, and he incurred substantial expenses for medical treatment.

[¶ 3.] Reed initially sued UND, John Gasparini, James Scanlan, Craig Perry, and Chad Peterson[1] in the United States District Court for the District of North Dakota, but voluntarily dismissed that action. Reed then sued NDAD, UND, Gasparini, Scanlan, Perry, and Peterson in Minnesota state court, alleging negligence against all the defendants and breach of contract against UND. All the defendants moved to dismiss the Minnesota action on jurisdictional grounds. The Minnesota trial court dismissed Reed's claim against NDAD for lack of personal jurisdiction, but allowed him to complete discovery on several issues regarding the other five defendants. Meanwhile, this Court abolished sovereign immunity in *Bulman v. Hulstrand Const. Co., Inc.,* 521 N.W.2d 632 (N.D.1994), and Reed then sued all six defendants in North Dakota state court, alleging the same claims against them. The North Dakota trial court stayed that action pending resolution of the Minnesota case.

[¶ 4.] In the Minnesota action, the UND defendants renewed their motion to dismiss, arguing lack of personal jurisdiction, forum non conveniens, comity, choice of law, sovereign immunity, and discretionary immunity. The Minnesota trial court dismissed Reed's claims against Gasparini and Scanlan on the ground of forum non conveniens. The trial court also dismissed Reed's claims against UND, Perry, and Peterson for lack of personal jurisdiction. Reed appealed, arguing the trial court erred in dismissing his claims against UND, Gasparini, and Scanlan.

[¶ 5.] The Minnesota Court of Appeals affirmed, concluding North Dakota law applied to Reed's Minnesota action and holding the Minnesota trial court properly dismissed Reed's personal injury claims against UND, Gasparini, and Scanlan on the basis of comity. *Reed v. University of North Dakota, et al.,* 543 N.W.2d 106, 108–10 (Minn.App.1996). The court of appeals also held Reed's contract claim against UND failed as a matter of law. *Id.* at 110. The Minnesota Supreme Court denied Reed's request to review the court of appeals' decision.

[¶ 6.] The North Dakota trial court then dismissed Reed's tort claims against UND, Gasparini, Scanlan, Perry, and Peterson on the basis of sovereign immunity and granted UND's motion for summary judgment on Reed's breach of contract claim against UND. The court allowed Reed to amend his complaint against NDAD to allege NDAD and UND had acted in concert and NDAD was jointly liable for damages attributable to UND's negligence. The court then granted summary judgment dismissing Reed's claims against NDAD. Reed appealed.

## II

[¶ 7.] We review this appeal under our standards for summary judgment, which is a procedural device for the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Diegel v. City of West Fargo,* 546 N.W.2d 367, 370 (N.D.1996). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the

---

1. Gasparini was the head UND hockey coach, Scanlan and Perry were assistant coaches, and Peterson was the trainer for the hockey team.

party opposing the motion, and that party must be given the benefit of all favorable inferences which reasonably can be drawn from the evidence. *Id.*

### III

[¶ 8.] Reed asserts his breach of contract claim against UND is not barred by res judicata, because the Minnesota action did not result in a decision on the merits by a court of competent jurisdiction. He argues the Minnesota court lacked personal jurisdiction over UND and therefore lacked authority to rule on the merits of his contract claim against UND.

[¶ 9.] Res judicata affords finality to the resolution of a legal dispute, which in turn increases certainty, discourages multiple litigation, and conserves scarce judicial resources. *K & K Implement, Inc. v. First Nat'l Bank*, 501 N.W.2d 734, 737–38 (N.D. 1993). In *Hofsommer v. Hofsommer*, 488 N.W.2d 380, 383 (N.D.1992) (citations omitted), we explained the related concepts of res judicata and collateral estoppel:

> Although collateral estoppel is a branch of the broader law of res judicata, the doctrines are not the same. Res judicata, or claim preclusion, is the more sweeping doctrine that prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction.... On the other hand, collateral estoppel, or issue preclusion, generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit.

[¶ 10.] Res judicata precludes the same parties or their privies from relitigating claims that were raised or could have been raised in a prior action resulting in a final judgment on the merits by a court of competent jurisdiction. *K & K Implement*, 501 N.W.2d at 738. The applicability of res judicata is a question of law. *Hofsommer*, 488 N.W.2d at 383.

[¶ 11.] Reed concedes the Minnesota action was a final decision between the same parties. Relying on *Dolajak v. State Auto. & Cas. Underwriters*, 252 N.W.2d 180 (N.D. 1977), he argues language from the Minnesota trial court's decision establishes his contract claim against UND was not decided on the merits in Minnesota.[2]

[¶ 12.] In *Dolajak*, this Court considered the effect of a Montana decision on a subsequent North Dakota proceeding. In that case, the plaintiffs sued a North Dakota contractor, Dolajak, in Montana state court for breach of contract and negligence in erecting a silo. A Montana jury awarded the plaintiffs damages, and the Montana Supreme Court affirmed. *See Bos v. Dolajak*, 167 Mont. 1, 534 P.2d 1258 (1975). Dolajak then sued his insurer in North Dakota state court, seeking insurance coverage for the Montana verdict. Dolajak's insurer defended under a clause of its policy excluding coverage for negligence, and argued the Montana decision was res judicata because it awarded damages for Dolajak's negligence.

[¶ 13.] This Court examined the Montana decision to ascertain whether it decided Dolajak's negligence on the merits. *Dolajak*, 252 N.W.2d at 183–84. We said the Montana jury had been instructed on both negligence and breach of contract and could have awarded damages on either, or both, theories. *Id.* We concluded, in the absence of a special jury interrogatory identifying the basis for the damages award in Montana, the Montana decision did not preclude Dolajak's North

---

2. Reed cites language from a footnote in the Minnesota trial court's decision emphasizing "although [the court was] deciding the validity of the breach of contract claim, using the summary judgment standard, for the purpose of determining whether [it had] specific jurisdiction, the Court is not granting summary judgment on the breach of contract claim, because it lacks jurisdiction to do so." *See Smith v. City of Grand Forks*, 478 N.W.2d 370, 372–73 (N.D.1991) (holding trial court does not have authority to rule on merits of claim if it lacks personal jurisdiction over defendant).

Dakota action against his insurer to decide the coverage issue:

> In determining whether or not the matter is res judicata it is not sufficient to merely find that it could have been included or could have been determined, but it is necessary to find that it was *actually* decided and determined. The record before us does not provide us with this answer. The record shows that Dolajak was a party to the proceedings in Montana and is a party to the proceedings in the North Dakota case. It further discloses that the subject matter in the North Dakota case is similar to that of the Montana case, but this is not sufficient.
>
> We do not have any assurance that the jury in the Montana case decided the question of damages against Dolajak on the basis of breach of contract or on negligence. The question we have before us is whether or not Dolajak was negligent so as to render the insurance policy inoperative. With the state of the record before us we can only speculate that negligence was considered by the jury. We believe that speculation is not sufficient and falls short of meeting the standards of res judicata.

*Id.* at 184 (emphasis in original).

[¶ 14.] *Dolajak* is distinguishable because there we had to speculate about the basis of the Montana jury verdict. Here, the Minnesota Court of Appeals explicitly ruled:

> Reed argues that UND breached either an oral contract or a written contract formed in Minnesota by the signing of the National Letter of Intent. We conclude the contract claims fail as a matter of law.
>
> . . . .
>
> Reed alleges he entered into an oral contract with UND. He has not, however, identified a breach of a specific contractual provision despite being given the opportunity to do so through discovery. Reed presents no evidence that his agreement to play hockey was conditioned on an obligation by UND to provide health care. While Reed speculates that colleges have a duty to protect the health of their athletes, he fails to demonstrate how such duty is grounded in contract.
>
> Further, assuming, as Reed contends, that the Letter of Intent is a written contract, Reed has again failed to identify a breach of any specific provision. Pursuant to the Letter of Intent, UND agreed to give Reed financial aid in exchange for his agreement to play hockey. Reed does not allege that UND breached this agreement and the Letter of Intent contains no provisions regarding UND's responsibilities regarding medical care. We therefore conclude the district court correctly determined that, when viewed in a light most favorable to Reed, the contract claims fail as a matter of law.

*Reed,* 543 N.W.2d at 110.

[¶ 15.] The Minnesota trial court concluded it lacked personal jurisdiction over UND and did not decide Reed's breach of contract claim against UND on the merits. Under Minnesota law, however, an appellee may seek affirmance of a trial court's decision on any ground asserted in the trial court. *Hunt v. Sherman,* 345 N.W.2d 750, 753 n. 3 (Minn.1984); *Western Lake Superior Sanitary v. Orfei & Sons, Inc.,* 463 N.W.2d 781, 786 (Minn.App.1990). Reed's statement of the case submitted to the Minnesota Court of Appeals asserted UND had breached a contract with him. The Minnesota Court of Appeals framed the contract issue as whether UND breached a contract formed in Minnesota and effectively concluded Minnesota had personal jurisdiction over UND for that claim. *See Reed,* 543 N.W.2d at 110. *See also* Minn.Stat. Ann. § 543.19(1)(b) (authorizing personal jurisdiction over nonresident transacting any business within state for claims arising from that transaction); *Marquette Nat'l Bank v. Norris,* 270 N.W.2d 290, 295 (Minn.1978) (holding single contractual transaction between parties may be sufficient to confer personal jurisdiction over nonresident party for claim arising from that transaction). The Minnesota Court of Appeals then held Reed's breach of contract claim failed as a matter of law. *Reed,* 543

N.W.2d at 110. Reed's petition for review to the Minnesota Supreme Court identified the breach of contract issue, and said the court of appeals had held the contract claim failed as a matter of law. The Minnesota Supreme Court denied Reed's request to review the court of appeals' decision.

[¶ 16.] Unlike *Dolajak*, here we need not speculate on the rationale of a final decision by a court from another state. Although Reed characterizes the Minnesota Court of Appeals' decision on his contract claim against UND as "inexplicable," the plain language of the court's opinion unequivocally decided Reed's breach of contract claim against UND on the merits. The Minnesota decision is entitled to full faith and credit in North Dakota, *see 1st Summit Bank v. Samuelson*, 1998 ND 113, ¶ 13, 580 N.W.2d 132, and res judicata precludes Reed from thereafter maintaining an identical claim against UND in North Dakota. We therefore affirm the summary judgment dismissal of Reed's breach of contract claim against UND.

## IV

[¶ 17.] Reed asserts the trial court erred in granting summary judgment dismissal of his claims against NDAD. Reed alleged NDAD was negligent in conducting the race and also acted in concert with UND regarding the hockey team's participation in the race, thus rendering NDAD jointly liable under N.D.C.C. § 32–03.2–02 for any negligence attributable to UND.[3]

### A

[¶ 18.] Reed contends a release in a race registration form signed by him does not bar his negligence claim against NDAD. Before the race, Reed signed a registration form which provided, in part:

> I am entering this event at my own risk and assume all responsibility for injuries I may incur as a direct or indirect result of my participation. For myself and my

heirs, I agree not to hold the participating sponsors and their directors, employees, and/or agents responsible for any claims. I also give permission for the free use of my name and/or picture in a broadcast, telecast, or other account of this event.

According to Reed, UND coaches presented the registration form to him before the race, and he had to sign it to run the race, which was a mandatory part of the UND hockey team's preseason conditioning program.

[¶ 19.] Reed asserts the release is not enforceable, because it was not supported by consideration. Consideration may be any benefit conferred or detriment suffered. *See* N.D.C.C. § 9–05–01. The forbearance of a legal right is a legal detriment which constitutes good consideration. *Matter of Estate of Jorstad*, 447 N.W.2d 283, 285 (N.D.1989). The existence of consideration is a question of law. *Id.*

[¶ 20.] As part of their preseason conditioning program, the UND hockey players were allowed to run on the same course during NDAD's road race. When the hockey players, including Reed, signed the registration form, they agreed not to hold the participating sponsors responsible for any claims arising from their participation in the event and NDAD agreed to let them run on the course during NDAD's road race. Reed's surrender of a legal right in exchange for NDAD allowing him to run the course during the race constitutes consideration for the release. *See Malecha v. St. Croix Valley Skydiving Club*, 392 N.W.2d 727, 731 (Minn.App.1986) (holding payment of fee and surrender of right to sue for negligence in exchange for skydiving training course constitutes valid consideration for release).

[¶ 21.] Reed contends the release is ambiguous. He asserts he did not contemplate the extreme nature of his injuries, nor the improper medical attention he received after collapsing from dehydration. He claims the phrases "participating sponsors"

---

**3.** Reed alleged NDAD and UND negligently failed to provide adequate emergency medical care and a sufficient water supply at the race site.

and "for injuries I may incur as a direct or indirect result of my participation" are vague and ambiguous. He argues there are genuine issues of material fact about the injuries the parties intended to release, thus precluding summary judgment.

[¶ 22.] Generally, the law does not favor contracts exonerating parties from liability for their conduct. *Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781, 783 (Colo.1989); *Harris v. Walker,* 119 Ill.2d 542, 116 Ill.Dec. 702, 519 N.E.2d 917, 919 (1988); *Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920, 923 (Minn.1982); *Dobratz v. Thomson,* 161 Wis.2d 502, 468 N.W.2d 654, 658 (1991). In *Schlobohm,* 326 N.W.2d at 923, the Minnesota Supreme Court explained contractual exculpatory clauses are strictly construed against the benefitted party, and will not be enforced if they are ambiguous, or release the benefitted party from liability for intentional, willful, or wanton acts.[4] Although exculpatory clauses are strictly construed against the benefitted party, the parties are bound by clear and unambiguous language evidencing an intent to extinguish liability. *See Szczotka v. Snowridge, Inc.,* 869 F.Supp. 247, 250 (D.Vt.1994); *Simkin,* 784 P.2d at 785; *Schlobohm,* 326 N.W.2d at 923; *Douglass v. Skiing Standards, Inc.,* 142 Vt. 634, 459 A.2d 97, 98 (1983); *Schutkowski v. Carey,* 725 P.2d 1057, 1060–62 (Wyo.1986). Whether a contract is ambiguous is a question of law. *Lire, Inc. v. Bob's Pizza Inn Rest., Inc.,* 541 N.W.2d 432, 433–34 (N.D. 1995).

[¶ 23.] The registration form identified NDAD as the entity to contact for information about the race. NDAD was clearly a participating sponsor of the race, and we reject Reed's argument the release is ambiguous because "participating sponsors" was not specifically defined in the registration form.

[¶ 24.] Under the broad language of this release, Reed assumed all responsibility for injuries incurred as a direct or indirect result of his participation in the race, and he agreed to exonerate NDAD from responsibility for any claims. Some courts have construed broad language of an exculpatory clause as an ineffective release of injuries not contemplated by the parties when the release was executed. *See Dobratz,* 468 N.W.2d at 661–62 (holding release unenforceable because it did not clearly identify specific types of skiing stunts to be performed during entire season of ski shows); *Arnold v. Shawano Cty. Ag. Soc.,* 111 Wis.2d 203, 330 N.W.2d 773, 778 (1983) (holding disputed issue of fact existed about whether risk of negligent rescue operation was contemplated by parties when they executed release), *overruled on other grounds by Green Spring Farms v. Kersten,* 136 Wis.2d 304, 401 N.W.2d 816, 821 (1981). Although the language of this release is broad, we believe it unambiguously evidences an intent to exonerate NDAD from liability for Reed's injuries.

[¶ 25.] We construe contracts to give effect to the parties' intent, which, if possible, must be ascertained by giving meaning to each provision of the contract. *Lire,* 541 N.W.2d at 433–34. This release was limited to a single event. *Compare Dobratz,* 468 N.W.2d at 662 (holding release for entire

---

4. We note N.D.C.C. § 9–08–02 precludes parties from contractually exonerating themselves from liability for willful acts:

> All contracts which have for their object, directly or indirectly, the exempting of anyone from responsibility for his own fraud or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

This release is not specifically limited to exonerating NDAD from liability for only negligent conduct. However, Reed's claims against NDAD are based on negligence, and he has not argued the release is invalid because it purports to exonerate NDAD from liability for intentional or willful acts.

We construe contracts in light of existing statutes, which become part of and are read into the contract as if those provisions were included in it. *See Storbeck v. Oriska School Dist.,* 277 N.W.2d 130, 134 (N.D.1979). The interpretation of this release is thus governed by N.D.C.C. § 9–08–02, and exoneration for "any claims" and "all responsibility" is limited to negligent acts as a matter of law.

season of ski shows unenforceable). Reed's complaint alleged NDAD was negligent in failing to provide adequate water stations at the race site and in failing to have medical personnel available to treat reasonably foreseeable race injuries. Reed may not have contemplated he would incur severe complications from dehydration, or allegedly receive improper emergency medical attention after collapsing from dehydration. Reed concedes, however, he was aware of some of the risks inherent to running, and his complaint effectively acknowledged dehydration was a reasonably foreseeable race injury. *Cf. Arnold,* 330 N.W.2d at 778 (holding disputed issue of fact about whether negligent rescue contemplated by parties when release executed). We believe the consequences of dehydration and the allegation of improper emergency medical care at the race site were within the plain meaning of Reed's assumption of all responsibility for injuries incurred as a direct or indirect result of his participation in the race and his agreement not to hold NDAD responsible for any claims. The plain language of this release would be rendered meaningless if it were construed as not exonerating NDAD from responsibility for the injuries incurred by Reed as a result of his participation in this race. We construe the release to effectuate the intent evidenced in its plain language, and we reject Reed's argument it vaguely and ambiguously described the injuries the parties intended to release. We conclude the release clearly and unambiguously evidences an intent to exonerate NDAD from liability for the injuries incurred by Reed as a result of his participation in this race.

[¶ 26.] Reed contends the release is against public policy, because he lacked bargaining power to negotiate or alter its terms. In considering whether a release is against public policy, other courts generally have considered: (1) the disparity of bargaining power between the parties in terms of compulsion to sign the agreement and lack of ability to negotiate elimination of the clause, and (2) the types of services provided by the party seeking exoneration, including whether they are public or essential services. *Schlobohm,* 326 N.W.2d at 923; *Simkin,* 784 P.2d at 784. *See* Restatement (2nd) Contracts § 195 (1981).

[¶ 27.] Here, any perceived mandatory requirement for Reed to participate in this race involved his relationship with the UND hockey program and not with NDAD. Although NDAD may not have allowed Reed to run in the race if he had not signed the registration form, he was not under any economic or other compulsion from NDAD to sign the release. Under these circumstances, we reject Reed's argument any differences in bargaining power between him and NDAD rendered this release invalid. We conclude the release was not against public policy, and we hold it exonerated NDAD from liability for Reed's negligence claims against NDAD.

### B

[¶ 28.] Reed also asserts the trial court erred in granting summary judgment dismissal of his "in concert" claim against NDAD. Reed argues NDAD and UND acted in concert in the organization and administration of the race, including the number and location of water stations and the availability of emergency medical care. He asserts NDAD and UND ratified or adopted each other's actions, and NDAD therefore is jointly liable under N.D.C.C. § 32–03.2–02 for any negligence by UND.

[¶ 29.] Section 32–03.2–02, N.D.C.C., codifies modified comparative fault and, as relevant to this case, provides:

> When two or more parties are found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party, except that any persons who act in concert in committing a tortious act or aid or encourage the act, or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault.

[¶ 30.] Section 32–03.2–02, N.D.C.C., was enacted in 1987 as part of tort reform intend-

ed to limit the application of joint liability. *See Target Stores v. Automated Maintenance Serv., Inc.*, 492 N.W.2d 899, 902 (N.D. 1992) (holding, absent a claim of concerted action, a sued tortfeasor cannot maintain third-party claim for contribution against a tortfeasor not sued by injured claimant); *Kavadas v. Lorenzen*, 448 N.W.2d 219, 223 (N.D.1989) (holding N.D.C.C. § 32–03.2–02 constitutional under rational basis test).

[¶ 31.] In *Target*, 492 N.W.2d at 902, we said the legislative history for N.D.C.C. § 32–03.2–02 did not identify the source for the "in concert" exception to several liability. We acknowledged, however, the phrase was remarkably similar to Prosser's formulation of joint liability of tortfeasors for concerted action at common law:

> All those who, in pursuance of a common plan or design to commit a tortious action, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's acts done for their benefit, are equally liable.

*Target*, 492 N.W.2d at 902, quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 46 (5th ed.1984).

[¶ 32.] Prosser explains the type of common plan or design necessary for concerted action:

> Express agreement is not necessary, and all that is required is that there be a tacit understanding, as where two automobile drivers suddenly and without consultation decide to race their cars on the public highway. There are even occasional statements that mere knowledge by each party of what the other is doing is sufficient "concert" to make each liable for the acts of the other; but this seems clearly wrong. Such knowledge may very well be important evidence that a tacit understanding exists; but since there is ordinarily no duty to take affirmative steps to interfere, mere presence at the commission of the wrong, or failure to object to it, is not enough to charge one with responsibility.

*Prosser*, at § 46. Under Prosser's formulation, concerted action requires an express or tacit agreement, and each party's knowledge of what the other is doing, presence during the commission of a wrong, or failure to object is not sufficient to impose joint liability. *Id. See also* Restatement (2nd) of Torts § 876 (1979); *Hurt v. Freeland*, 1999 ND 12, ¶¶ 22–28, 589 N.W.2d 551, (discussing § 876 in affirming summary judgment dismissal of negligence claim against passengers in car driven by intoxicated driver).

[¶ 33.] Here, NDAD and UND agreed NDAD would permit UND hockey players to run on NDAD's course during the race. There was evidence UND permitted NDAD to advertise participation of the hockey team to elicit greater community interest and participation in the race. There was evidence UND had some knowledge about NDAD's planning and supervision of the race, and NDAD had some knowledge about UND's supervision of the hockey players during the race. There was also evidence a UND representative inquired before the race about the availability of water and emergency medical care at the race site. There is no evidence, however, NDAD participated with UND in the planning and supervision of the hockey team's running in the race, or UND participated with NDAD in the planning and supervision of the remaining entrants' running in the race. Under the circumstances of this case, we decline to elevate each party's mere knowledge of the other's activities to an express or tacit agreement. We conclude knowledge of each other's acts, presence at the race site, failure to object, and inquiries about availability of water and emergency care, as a matter of law, do not show a common plan or design necessary for in concert action.

[¶ 34] Although NDAD and UND may have been concurrently negligent in relying upon each other to perform certain acts at the race site, N.D.C.C. § 32–03.2–02 was clearly intended to limit the application of joint liability to persons who act in concert. We decline to broadly construe the "in concert" language of N.D.C.C. § 32–03.2–02 to include concurrent negligence, because that construction would effectively render mean-

ingless the general rule for several liability. We construe statutes as a whole to give meaning to each word and phrase, if possible. *Matter of Estate of Victoria Jane Thompson,* 1998 ND 226, ¶ 7, 586 N.W.2d 847. We hold the trial court properly granted summary judgment dismissing Reed's "in concert" claim against NDAD.

### V

[¶ 35.] We affirm the summary judgment dismissing Reed's complaint against UND and NDAD.

[¶ 36.] VANDE WALLE, C.J., NEUMANN and SANDSTROM, JJ., concur.

[¶ 37.] The Honorable CAROL RONNING KAPSNER was not a member of the Court when this case was heard and did not participate in this decision.

