2002 ND 1

Steven JASKOVIAK, Plaintiff
and Appellant,

v.

Daniel GRUVER, M.D., Defendant
and Appellee,

and

Medcenter One Health Systems,
Defendant.

No. 20010065.

Supreme Court of North Dakota.

Jan. 3, 2002.

Robert V. Bolinske (on brief), Bismarck, for plaintiff and appellant.

Robert J. Udland, Vogel, Weir, Hunke & McCormick, Ltd., Fargo, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Steven Jaskoviak appealed a summary judgment dismissing, without prejudice, his action against Daniel Gruver, M.D., and Medcenter One Health Systems ("Medcenter"). We conclude summary judgment was improperly ordered, and we reverse and remand for further proceedings.

I

[¶ 2] In 1997, Gruver operated on Jaskoviak at Medcenter's hospital. In 1998, Jaskoviak sued Gruver and Medcenter, alleging "Gruver was negligent in his care and treatment of plaintiff in the surgical procedure involving the removal of varicose veins," and Medcenter "was negligent in employing and permitting an unqualified physician to practice medicine." Gruver and Medcenter moved for summary judg-

ment dismissing Jaskoviak's action, or for dismissal for failure to comply with N.D.C.C. § 28–01–46, which provides, in part:

> Any action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence must be dismissed without prejudice on motion unless the claimant has obtained an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court for good cause shown by the plaintiff.... This section does not apply to alleged lack of informed consent ... or ... obvious occurrence.

Section 28–01–46, N.D.C.C., "provides for preliminary screening of totally unsupported claims, and seeks to prevent protracted litigation when a medical malpractice plaintiff cannot substantiate a basis for the claim." *Greenwood v. Paracelsus Health Care Corp.*, 2001 ND 28, ¶ 8, 622 N.W.2d 195.

[¶ 3] Jaskoviak moved to amend his complaint to add an additional paragraph, "essentially as follows":

> That, further, defendants Gruver and Medcenter One Health Systems failed to obtain plaintiff Steven Jaskoviak's informed consent for the procedures involved in this action.

The district court granted Jaskoviak's motion and later issued an order permitting Jaskoviak to amend his complaint to include a claim for lack of informed consent against Gruver, but not against Medcenter. Jaskoviak never served an amended complaint.

[¶ 4] On December 27, 2000, the trial court dismissed the negligence claim against Gruver for failure to comply with N.D.C.C. § 28–01–46, and dismissed the

negligence claim against Medcenter, because "nothing has been submitted establishing an admissible expert opinion on the issue of whether Medcenter was negligent in hiring or permitting Gruver to practice at Medcenter." Although the trial court recognized N.D.C.C. § 28–01–46 does not apply to Jaskoviak's informed consent claim, the trial court granted summary judgment dismissing the informed consent claim for lack of an expert opinion, explaining:

> The only remaining claim is that Gruver failed to obtain Steven Jaskoviak's informed consent. While § 28–01–46 does not apply to this issue in terms of whether an expert opinion must be provided, it is clear that establishing a violation of the requirements of informed consent does require expert testimony. The only expert evidence of negligence that has been presented in this case is Dr. Hamar's affidavit, wherein he states (1) what options were available to the plaintiff, (2) that a physician has a duty to explain alternative treatments and the risks of each, and (3) that, if the plaintiff was not so informed, such failure would constitute medical negligence.
>
> The Note to North Dakota Civil Pattern Jury Instruction C–14.20 states: "Expert testimony is generally necessary to identify the risks of treatment, their gravity, the likelihood of occurrence, and reasonable alternatives." Dr. Hamar's affidavit sets out reasonable alternatives, but does not establish any of the other requirements. Nor does any other evidence presented by the plaintiff do so. Further, the plaintiff has provided no evidence establishing the general elements of medical negligence, those being the standard of care applicable, the defendant's failure to meet the standard of care, and that the defendant's failure to meet the standard of care caused the plaintiff's alleged damages.

[¶ 5] A judgment of dismissal without prejudice was entered January 9, 2001. On January 12, 2001, Jaskoviak moved for reconsideration. The trial court denied Jaskoviak's motion for reconsideration. Jaskoviak appealed. Jaskoviak later agreed to the voluntary dismissal of his appeal of that part of the judgment dismissing his claims against Medcenter.

[¶ 6] Jaskoviak contends the judgment is appealable, the trial court erred in denying his motion for reconsideration, and the trial court erred in granting Gruver's motion for summary judgment. Gruver contends the judgment is appealable, the informed consent issue was not properly before the trial court, the trial court properly denied Jaskoviak's motion for reconsideration, and the trial court properly granted summary judgment.

[¶ 7] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 8] The judgment of dismissal entered in this case specified it was without prejudice. "[A] dismissal without prejudice is ordinarily not appealable." *Rodenburg v. Fargo–Moorhead Young Men's Christian Ass'n*, 2001 ND 139, ¶ 12, 632 N.W.2d 407. "However, a dismissal without prejudice may be final and appealable . . . if the dismissal has the practical effect of terminating the litigation in the plaintiff's chosen forum." *Id.* If the dismissal stands, Jaskoviak will be barred from bringing another action by N.D.C.C. § 28–01–18(3), which sets a two-year statute of limitations for malpractice. Thus, as in *Rodenburg*, the judgment of dismissal

without prejudice in this case "effectively forecloses litigation in the courts of this state," and, we conclude, it "is, therefore, appealable." *Id.* at ¶ 12.

## III

[¶ 9] Gruver contends the trial court abused its discretion in granting Jaskoviak's motion to amend the complaint, and contends Jaskoviak's appeal should be dismissed because, although the trial court granted his motion to amend the complaint to add a claim that Gruver and Medcenter failed to obtain his informed consent, Jaskoviak never served an amended complaint. We will not reverse a trial court's decision to grant or deny a motion to amend pleadings absent an abuse of discretion. *Messiha v. State,* 1998 ND 149, ¶ 7, 583 N.W.2d 385. We conclude the trial court did not abuse its discretion in granting the motion to amend. This Court has held that when a motion to amend a complaint has been granted, the plaintiff must affirmatively redraw the complaint to effect an amendment or the amendment is deemed abandoned, *Hausken v. Coman,* 66 N.D. 633, 268 N.W. 430, 431, Syll. ¶ 2 (1936), leaving "no issue framed in the pleadings," *Clark v. Ellingson,* 35 N.D. 546, 161 N.W. 199, 201 (1916). *See also Nelson v. Adams USA, Inc.,* 529 U.S. 460, 120 S.Ct. 1579, 1584, 146 L.Ed.2d 530 (2000) (where a motion to amend a complaint to add a defendant was granted and judgment was entered without an amended pleading having been composed, served, and filed, and the defendant was not afforded ten days to state his defenses, "the proceedings did not comply with Rule 15, and neither did they comport with due process"). Here, however, a copy of the proposed amendment was served with the motion to amend, and Gruver was not disadvantaged. Furthermore, Gruver did not raise the lack of service of an amended complaint as an issue in the trial court.

An issue not raised in the trial court cannot be raised for the first time on appeal. *Moilan v. Moilan,* 1999 ND 103, ¶ 32 n. 2, 598 N.W.2d 81.

## IV

[¶ 10] Jaskoviak contends the trial court erred in denying his motion for reconsideration. A judgment of dismissal without prejudice was entered January 9, 2001. On January 12, 2001, Jaskoviak moved for reconsideration, supporting his motion with an affidavit of Dr. Martin L. Bell, a brief, and his own affidavit, averring, among other things, he would not have undergone the surgery performed by Gruver if Gruver had properly advised him about available alternatives for treating his condition. The trial court ruled "[t]he materials provided supporting the Motion do not provide a basis for the Court to change its ruling." Evidence submitted with a motion for reconsideration after summary judgment has been granted is untimely, and this Court "need not examine whether it is sufficient to raise a genuine factual issue." *Follman v. Upper Valley Spec. Educ. Unit,* 2000 ND 72, ¶ 12 n. 5, 609 N.W.2d 90. Because the affidavits submitted in support of Jaskoviak's motion for reconsideration were submitted after summary judgment was issued, they were untimely and we need not determine whether they were sufficient to raise a genuine factual issue precluding summary judgment.

## V

[¶ 11] Jaskoviak contends the trial court erred in granting Gruver's motion for summary judgment. We recently explained our review of summary judgments:

We review this appeal in the posture of summary judgment, which is a procedural device for the prompt and expeditious disposition of a controversy with-

out a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Reed v. University of North Dakota*, 1999 ND 25, ¶ 7, 589 N.W.2d 880. On appeal, we review the evidence in the light most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which reasonably can be drawn from the evidence. *Id.* Although the party seeking summary judgment must initially demonstrate there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings or upon unsupported conclusory allegations. *Engel v. Montana Dakota Utils.*, 1999 ND 111, ¶ 7, 595 N.W.2d 319. A party resisting a summary judgment motion must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Id.* Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Id.* Issue[s] of fact may be appropriate for summary judgment if reasonable minds can draw only one conclusion from the evidence. *Opp v. Source One Mgmt., Inc.*, 1999 ND 52, ¶ 16, 591 N.W.2d 101.

*Dahlberg v. Lutheran Soc. Servs.*, 2001 ND 73, ¶ 11, 625 N.W.2d 241.

[¶ 12] "Our caselaw generally requires that the plaintiff establish through expert testimony the degree of care and skill required of a physician, and whether specified acts fall below that standard of care," *Greenwood v. Paracelsus Health Care Corp.*, 2001 ND 28, ¶ 13, 622 N.W.2d 195 unless "a physician's activity constitutes a blunder so egregious that a layman is capable of comprehending its enormity," *Winkjer v. Herr*, 277 N.W.2d 579, 585 (N.D.1979). This Court has recognized "trial courts should be extremely cautious in entering summary judgment in medical malpractice cases because of a lack of expert testimony." *Winkjer*, at 589. Nevertheless, summary judgment may be proper if the plaintiff has failed to indicate he or she has or will be able to obtain expert medical opinion to support his or her informed consent allegations and the defendant has met the requirement of showing there is no genuine issue of fact. *Id.*

[¶ 13] Jaskoviak's claim is based on Gruver's alleged failure to obtain Jaskoviak's informed consent before the surgery. "[T]he doctrine of informed consent is a form of negligence which essentially relates to a duty of a doctor to disclose pertinent information to a patient." *Fortier v. Traynor*, 330 N.W.2d 513, 517 (N.D.1983). "The root premise in informed-consent cases is the fundamental concept stated by Justice Cardozo: 'Every human being of adult years and sound mind has a right to determine what shall be done with his own body.' (Citation omitted)" *Buzzell v. Libi*, 340 N.W.2d 36, 40 (N.D.1983). A plaintiff in an informed-consent case must establish breach of a physician's duty of disclosure, causation, and injury. *Id. See also Guidry v. Neu*, 708 So.2d 740, 743 (La.Ct.App.1997) (plaintiff must show the existence of a material risk, which the physician failed to disclose, and a causal connection between the disclosure failure and the actual risk sustained); 2 J.D. Lee and Barry A. Lindahl, *Modern Tort Law* § 25:35 (Rev. ed.1989)

[hereinafter *Modern Tort Law* ] (plaintiff must show the existence of a material risk unknown to the plaintiff, a failure to disclose that risk, causation, and injury); 1 Dan B. Dobbs, *The Law of Torts* § 250 (2001) (*"Dobbs"*) (plaintiff must establish nondisclosure of required information, actual damage resulting from the undisclosed risk, causation, and that reasonable persons, if properly informed, would have rejected the proposed treatment). "A causal connection exists only when adequate disclosure would have caused the patient to withhold consent to the particular course of treatment or procedure." *Buzzell*, 340 N.W.2d at 40. *See also* 2 *Modern Tort Law, supra,* at § 25:48 (patient can establish a causal connection between an injury and the physician's failure to disclose by showing "that had there been a proper disclosure, the patient would not have consented to the treatment").

[¶ 14] "Whenever a plaintiff alleges a potential complication arose from a known but undisclosed risk, . . . the courts are divided on whether the action should be deemed a battery or negligence." *Winkjer*, 277 N.W.2d at 587. This Court has adopted the negligence theory:

> Although there is authority to the contrary, we find persuasive the modern trend that in cases such as this when . . . "the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information" . . . that failure should be termed one in negligence. *Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505, 512, 502 P.2d 1, 8 (1972); *Cornfeldt v. Tongen*, 262 N.W.2d 684 (Minn.1977).

*Winkjer*, at 587. *See also Fortier*, 330 N.W.2d at 517 (informed consent doctrine is a form of negligence). "Beginning in 1972 . . . the new cases . . . have tended to favor a duty to disclose all material information, that is, information the physician can reasonably expect a patient would want to consider in determining whether to undergo the medical procedure." 1 *Dobbs, supra*, at § 250, citing *Canterbury v. Spence*, 464 F.2d 772 (D.C.Cir.1972); *Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972); *Carr v. Strode*, 79 Hawai'i 475, 904 P.2d 489 (1995); *Cowman v. Hornaday*, 329 N.W.2d 422 (Iowa 1983); *Harnish v. Children's Hosp. Med. Ctr.*, 387 Mass. 152, 439 N.E.2d 240 (1982); *Largey v. Rothman*, 110 N.J. 204, 540 A.2d 504 (N.J.1988); *Scott v. Bradford*, 606 P.2d 554 (Okla.1979); *Moure v. Raeuchle*, 529 Pa. 394, 604 A.2d 1003 (1992); *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972).

[¶ 15] "Generally there exists as an integral part of the physician's overall obligation to his patient the duty of reasonable disclosure of the available choices with respect to the proposed therapy and of the material and known risks potentially involved in each." *Winkjer*, 277 N.W.2d at 587. A more difficult question is "the extent of the duty and the standard by which it should be measured." *Id.*

[¶ 16] "The majority of the courts have related the duty to the custom of the physician practicing in the community." *Winkjer*, 277 N.W.2d at 587. "The professional standard, once the prevailing view, has come under sustained criticism in recent years." 2 *Modern Tort Law, supra,* at § 25:46, citing *Largey v. Rothman*, 110 N.J. 204, 540 A.2d 504 (1988); *Culbertson v. Mernitz*, 602 N.E.2d 98 (Ind.1992).

An increasing number of courts have adopted an "objective" or "material-risk" standard, also referred to as the "patient rule." . . . [T]he test is whether the physician disclosed all those facts, risks and alternatives that a reasonable person in the situation which the physician knew or should have known to be the plaintiff's would deem significant or material in making a decision to undergo

the recommended treatment, the "prudent patient" standard.

2 *Modern Tort Law* § 25:46. As this Court recognized in *Winkjer*, 277 N.W.2d at 587–88:

A growing number of jurisdictions have adopted the persuasive reasoning of the lead case of *Canterbury v. Spence,* 150 U.S.App. D.C. 263, 464 F.2d 772 (1972), *cert. denied* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 stating that . . . a patient's cause of action is not limited to the existence and nonperformance of a relevant professional tradition. These courts have stated a patient's right of self-determination in particular therapy demands a standard set by law for physicians rather than one which physicians may or may not impose upon themselves. As stated in *Canterbury* at page 276, 464 F.2d at page 785:

" . . . We hold that the standard measuring performance of that duty by physicians, as by others, is conduct which is reasonable under the circumstances." [Footnotes omitted.]

And at pages 277 and 278, 464 F.2d at pages 786 and 787:

"Thus the test for determining whether a particular peril must be divulged is its materiality to the patient's decision: all risks potentially affecting the decision must be unmasked." [Footnote omitted.]

[¶ 17] In acquiring a patient's informed consent to a medical procedure, a physician should disclose a number of things: It is sometimes said that the physician should disclose the diagnosis, the general nature of the contemplated procedure, the material risks involved in the procedure, the probability of success associated with the procedure, the prognosis if the procedure is not carried out, and the existence and risks of any alternatives to the procedure.

1 Dobbs, *supra,* at § 251. *See also* Steven E. Pegalis, *American Law of Medical Malpractice 2nd* § 4:1, pp. 186–88 (1992), noting the American Hospital Association Risk Management Handbook advises disclosing the nature and purpose of the proposed test or treatment, the probable risks and benefits of the proposed intervention, alternative forms of care and their probable risks and benefits, remote or unusual risks involving severe injury, disability, or death, and the risks of refusing care or diagnostic tests.

[¶ 18] Assessing the materiality of a risk involves a two-pronged analysis: (1) "an examination of the existence and nature of the risk and the probability of its occurrence"; and (2) "a determination by the trier of fact of whether the risk is the type of harm which a reasonable patient would consider in deciding on medical treatment." *Guidry,* 708 So.2d at 744. The materiality of information about the risk of a potential injury is a function of the severity of the potential injury and of the likelihood it will occur. 2 *Modern Tort Law, supra,* at § 25:46; 1 *Dobbs, supra,* at § 251. A physician is not required to inform a patient of risks that are so remote as to be negligible even where the consequences may be severe, and is not required to inform the patient of a very minor consequence even though the probability is high. 2 *Modern Tort Law, supra,* at § 25:46. Thus, as this Court recognized in *Winkjer,* 277 N.W.2d at 588:

A duty to disclose can arise only if the physician knew or should have known of the risks to be disclosed. *Cornfeldt v. Tongen, supra.* Also, a physician is not required to disclose all possible risks and dangers of the proposed procedure but only those that are significant in terms of their seriousness and likelihood

of occurrence. There is no need to disclose risks of little consequence, those that are extremely remote, or those that are common knowledge as inherent in the treatment. *Cobbs v. Grant, supra,* 104 Cal.Rptr. at 515, 502 P.2d at 11. Ultimately, a "trier of fact must determine whether a reasonable person in the plaintiff's position would attach significance to the specific risk." *Guidry,* 708 So.2d at 744. "The disclosure requirement is in essence a requirement of conduct prudent under the circumstances." 2 *Modern Tort Law, supra,* at § 25:47.

[¶ 19] "[E]xpert medical testimony is generally necessary to identify the risks of treatment, their gravity, likelihood of occurrence, and reasonable alternatives." *Winkjer,* 277 N.W.2d at 588. "The necessity for expert testimony is particularly so when such information is outside the common knowledge of laymen." *Id.* "Expert testimony may be necessary under the lay standard, at least to establish the existence of a risk, its likelihood of occurrence, and the type of harm in question; after that, however, expert evidence may not be required." 2 *Modern Tort Law, supra,* at § 25:46. "However, experts may be required to show both that material information existed and that the defendant should reasonably have known about it." 1 *Dobbs,* at 656.

[¶ 20] In responding to Jaskoviak's motion to amend his complaint to allege a lack of informed consent and requesting summary judgment of dismissal, Gruver submitted a February 17, 1997, medical record stating:

Steven Jaskoviak is in for vein stripping. Note the H & P. I explained the possible complications of surgery including infection, postop pain, and recurrence of pain.

Gruver also submitted a May 4, 1998, medical record of Dr. Steven K. Hamar, which stated of a visit and examination of Jaskoviak, in part:

Since his vein stripping, he has had considerable discomfort from the mid-thigh to the mid-calf area, both lower extremities to the point where he cannot walk very much. He says it just hurts all the time.... He has a numbness ... and he also had some discoloration of the right lower extremity where the vein had been excised and he was concerned about that.

. . . .

At this point in time, I have discussed with him what the complications of varicose vein surgery are which essentially entail what he has going on here. They are known complications. The pigmentation is not something that is probably going to go away at this point in time. The numbness is certainly not going to go away and his incisions have healed. The gaiter area is not going to improve. There is nothing surgically that can remove this. He does need to wear Jobst Varix compression hose 30–40 mm. of mercury knee-high bilaterally and should do this for the remainder of his lifetime and I have told him that.

[¶ 21] Jaskoviak supported his response to the motions for dismissal with an affidavit of Dr. Hamar, which stated, in part:

3. I have seen Steven Jaskoviak on several occasions. It is my opinion that prior to surgery Mr. Jaskoviak should be or have been informed of the options and/or alternative treatments for varicose veins. These include (1) to inject them with a sclerosing solution (2) to remove them by the stripping operation or (3) to treat them with pressure elastic stockings.

4. It is my further opinion that a physician has a duty to inform the patient as to the nature of the procedure to

be performed, the purpose it will serve, the alternatives involved and the dangers and risks of serious complications inherent in the procedure. The risks and benefits of each alternative procedure must also be explained.

5. Before performing the vein stripping procedure performed on Mr. Jaskoviak, had I been his physician, I would have informed him of each of the alternative treatment procedures available and would have specifically advised him of the risks and benefits of each. If this was not done it would, in my opinion, constitute medical negligence in that Mr. Jaskoviak was not provided with sufficient information to give his informed consent to the surgical procedure performed by Dr. Gruver.

Jaskoviak also supported his response with his own affidavit, stating, in part:

At no time before the operation did Dr. Gruver tell me anything about what was going to happen. He never explained to me that I'll be scarred for life like Dr. Hamar told me. He never told me that I would need to wear corrective Jobst socks for the rest of my life. He never told me that I would lose all my strength and not be able to do the things that I did before.

[¶ 22] Dr. Hamar's affidavit addressed alternative treatments for Jaskoviak's varicose veins; stated a physician's general duty to disclose the nature and purpose of a proposed procedure, the risks involved in the procedure, alternatives to the procedure, and the risks and benefits involved in the alternatives; and said a failure to disclose those things would constitute medical negligence. In his May 4, 1998, medical record, Dr. Hamar states the "known complications" of varicose vein surgery "essentially entail what [Jaskoviak] has going on here."

[¶ 23] In our view, the affidavits of Jaskoviak and his expert, Dr. Hamar, together with Dr. Hamar's May 4, 1998, medical record, set forth evidence of the standard of care to be met by Gruver, Gruver's failure to meet the required standard of care, injury, and causation. Considered with Gruver's February 17, 1997, medical record, this evidence raises a genuine issue of material fact as to whether Gruver failed to obtain Jaskoviak's informed consent to the surgery, by failing to inform Jaskoviak of the nature of the procedure to be performed, its purpose, alternatives, and the dangers and risks involved in the procedure. We therefore conclude summary judgment of dismissal was improperly ordered.

## VI

[¶ 24] The judgment is reversed, and the matter is remanded for further proceedings.

[¶ 25] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., and WILLIAM W. McLEES, D.J., concur.

[¶ 26] The Honorable WILLIAM W. McLEES, D.J., sitting in place of KAPSNER, J., disqualified.