Diane CROWSTON, Plaintiff,

Susan Syverson, Virginia Odland, and Elaine Hegland, Plaintiffs and Appellants,

v.

JAMESTOWN PUBLIC SCHOOL DISTRICT NO. 1, a public corporation, Defendant and Appellee.

Civ. Nos. 10324–10326.

Supreme Court of North Dakota.

June 24, 1983.

---

Chapman & Chapman, Bismarck, for plaintiffs and appellants; argued by Daniel J. Chapman, Bismarck.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellee; argued by Carlton J. Hunke, Fargo.

ERICKSTAD, Chief Justice.

This case involves a factual determination of the period of time during which Virginia Odland, Susan Syverson and Elaine Hegland, all teachers in the Jamestown Public School District, were entitled to sick leave due to pregnancy-related reasons. All three of the plaintiffs contended that they were disabled for a period of six weeks. However, the District Court of Stutsman County determined that the plaintiffs were unable to perform their job-related responsibilities as teachers for a period of three weeks, not six weeks, following the delivery of their babies and, consequently, they were entitled to sick leave for that period of time. A judgment was entered in accordance therewith from which the plaintiffs, Virginia Odland, Susan Syverson, and Elaine Hegland, now appeal.[1] For the reasons hereinafter stated, we affirm.

At the time Virginia Odland and Susan Syverson had their babies, February 3, 1980, and March 4, 1980, respectively, the school district's sick leave policy was:

"*Sick Leave:*

The Jamestown Schools provide a cumulative sick leave of ten days per year accumulating to 130 days in 13 years. If a teacher is absent for more than three days consecutively, a doctor's certificate will be required. The School Board may request a medical examination if excessive absence occurs."

Subsequent thereto, on September 6, 1980, Virginia Odland and Susan Syverson contacted the Jamestown School Board and requested that they be paid sick leave for the number of days they were absent from work following the births of their babies. To substantiate their claims for sick leave, the two teachers submitted identical certificates signed by Dr. Robert E. Lucy. These certificates, under date of September 17

and 30, 1980, respectively, stated in pertinent part:

"[Virginia Odland] [Susan Syverson] was advised to take six weeks leave of absence after delivery."

The teachers' requests for sick leave were denied by the School Board.

Elaine Hegland's baby was born on April 20, 1981. As of that date, the school district's policy with regard to sick leave for pregnancy-related reasons stated:

"*Sick Leave:*

The Jamestown Schools provide a cumulative sick leave of ten days per year accumulating to 130 days in 13 years. A woman teacher unable to work for pregnancy related reasons will be entitled to sick leave or other benefits on the same basis as teachers unable to work for other reasons. In any event, if the period of disability exceeds three days, a certificate must be received from the teacher's physician stating that the teacher is disabled for employment purposes. The School Board may request an independent medical examination at its own expense for purposes of verifying said disability. The School Board may request a medical examination if excessive absence occurs."

In accordance with the school district's sick leave policy, Dr. Thomas O. Ashwell submitted a letter, dated April 30, 1981, on Elaine Hegland's behalf. Dr. Ashwell's letter contained the following:

"It is my recommendation that she not work for approximately six weeks following the pregnancy."

The school board partially honored Elaine Hegland's request for sick leave by paying her for three weeks of sick leave time.

Under Section 15–47–35, N.D.C.C., teachers are contractually entitled to "at least ten days' permissible absence annually due to sickness, without loss in pay for the period."[2] The Jamestown school district's

---

1. Diane Crowston did not appeal, but we have referred to the testimony of Dr. Kerr, her physician, as it relates generally to disability following an uncomplicated delivery.

2. Section 15–47–35, N.D.C.C., reads in its entirety as follows:

"*15–47–35. Ten days' annual sick absence —Cumulative.* The employment contract of any teacher, as defined in section 15–47–26 shall provide for at least ten days' permissible absence annually due to sickness, without loss in pay for the period; and shall further

policies with regard to sick leave comply with this statutory provision but require a doctor's certificate if the teacher is unable to work for more than three consecutive days. The first and foremost question presented by this factual situation is:

(1) Whether or not the trial court correctly interpreted the term "sick leave" to mean a temporary period of time during which a teacher is either mentally or physically incapable of performing her job-related responsibilities.

"Sickness" is commonly understood to mean a temporary condition which affects one's body to such a degree that it prevents one from performing his usual avocations or functions. *See,* Black's Law Dictionary, Fourth Edition. The courts have similarly construed the word "sickness" to mean a condition which incapacitates an individual:

"'* * * While the word "sickness" is technically synonymous with such words as "disease," it is popularly differentiated in this way: One is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected; he is regarded as sick, when that diseased condition has advanced far enough to incapacitate him.'" *World Insurance Company of Omaha, Nebraska v. Pipes,* 255 F.2d 464, 471 (5th Cir.1958) quoting from *Milan v. Norwich Union Indemnity Co.,* 107 W.Va. 574, 149 S.E. 668, 669 (1929).

This usual definition of "sickness" as being a period of temporary disability has been extended to and applied in the area of sick leave for pregnancy-related reasons. In fact, the statutory phrase "annual sick leave of ten school days" has been interpreted to include "[a] temporary disability resulting from pregnancy, which a physician deemed to require absence from work, . . . ." *Murray v. Waterville Bd. of Ed.,* 390 A.2d 516, 519 (Maine 1978).

■ Thus, we conclude as did the trial court that the terms "due to sickness" or "sick leave" necessarily imply a period of time during which a teacher is temporarily disabled as a result of sickness or injury from performing her duties. Defining these terms in such a manner comports with the terms' generally accepted definitions and with the applicable case law interpreting such terms.

■ Having defined the term "sick leave", we must now ascertain:

(2) Whether or not the trial court properly applied the school district's sick-leave policies with regard to the plaintiffs' claims for six weeks of sick leave due to pregnancy related reasons.

The plaintiffs assert that they filed doctors' certificates as required by the sick leave policies and, therefore, they are entitled to be paid sick leave for the period of time specified in their doctors' certificates. However, all three of the certificates in question merely contained recommendations from Dr. Lucy and Dr. Ashwell that the women not work for six weeks following delivery of their babies. There was no specific statement in any of the certificates to the effect that Virginia Odland, Elaine Hegland, or Susan Syverson were unable to perform their duties as teachers for a period of six weeks. Accordingly, we believe the trial court correctly determined that the plaintiffs were not entitled to six weeks of sick leave on the basis of such certificates.

The final issue to be resolved is:

(3) Whether or not the trial court's factual determination that Virginia Odland, Susan Syverson and Elaine Hegland were unable to perform their duties as teachers for a period of three weeks, not six weeks, following the delivery of their babies and, thus, were entitled to sick leave for that period of time, is clearly erroneous.

■ The legal principles governing the application of Rule 52(a) of the North Dakota Rules of Civil Procedure are not in dispute and thus can be briefly summarized. A finding is clearly erroneous only when,

provide for any unused portion of such annually permissible absence to be cumulative from year to year, with a minimum accumulation of thirty days."

although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Wilhelm v. Berger,* 297 N.W.2d 776, 779 (N.D.1980); *Alumni Association of University v. Hart Agency, Inc.,* 283 N.W.2d 119, 121 (N.D.1979). Our function is not to decide factual issues de novo. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969); *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973).

 The medical testimony in the record overwhelmingly supports the trial court's finding of fact. Specifically, on cross-examination by counsel for the school district, Dr. Lucy explained and clarified his recommendation that Virginia Odland and Susan Syverson take six weeks leave of absence:

"Q. Is it fair to say that what you really feel is that a woman—it may be good for her to have six weeks of relaxation, six weeks with the child after a birth, correct, as in terms of maternal leave?

"A. Oh, I think they should, definitely.

"Q. But is it also fair to say that during that same period of time, that six-week period, the woman can be physically active without harm to herself?

"A. Sure.

"Q. With regard to Mrs. Odland and Mrs. Syverson, they could be physically active and able to do the duties of a school teacher?

"A. They might be able to.

"Q. And your decision that they have six weeks of disability is something that you feel would be good for them, but not something that's caused by any specific physical incapacity?

"A. No. It's something that would be good for them, to rest.

"Q. Sure.

"A. Recuperate.

"Q. But not because they were physically incapable of performing their job duties?

"A. That's correct.

"Q. And, in fact, they have the physical equipment, being able to walk, to stand, to move about, certainly within five days after leaving the hospital?

"A. That's correct."

Dr. Ashwell, Elaine Hegland's physician, testified that after fifteen days of sick leave "she could do the work but it wouldn't be the best thing for her physically. She would still be tired and at times not feeling well. She would not be performing at peak efficiency. She could do the work." Dr. Ashwell did concede, however, that an individual does not have to be completely normal to adequately perform his job-related responsibilities.

Dr. Lucy and Dr. Ashwell's testimony was buttressed and further clarified through the testimony of Dr. Glenn E. Kerr and Dr. Corey L. Nyhus. Dr. Kerr testified in pertinent part:

"Q. Doctor, I understand you to testify that even in the pelvic area itself where you have made the episiotomy incision that 90% of the strength would have returned in a normal, healthy woman, in a normal, uncomplicated delivery, within three weeks of the delivery, is that correct?

"A. Correct.

"Q. And it might be an indication that the woman as a whole by that time has returned to essentially normal strength?

"A. As far as the laceration healing, that is correct; but as far as metabolic overall repair, I don't know that I can categorically put a three-week limit on it.

"Q. It might be a little longer and it might be a little shorter, correct?

"A. Yes. It depends on everybody's nutritional status, what they eat at home, and-so-forth, how good a shape they are in right before the delivery."

In conclusion, Dr. Kerr explained his difficulty in limiting the period of disability following an uncomplicated delivery to 14 days:

"Q. You feel uncomfortable not because they are not physically able to do things but you feel uncomfortable about it because you are concerned also about the relationship of the parent and child?

"A. That is right."

Dr. Nyhus testified that the first and foremost reason for recommending a six weeks leave of absence period is the bonding process between mother and child. Dr. Nyhus further testified that a woman who was physically fit prior to an uncomplicated normal delivery may be able to perform an essentially sedentary job within two weeks after giving birth to the child.

In the case at bar, all three women had normal uncomplicated deliveries. At their six week examination, all of the women were certified as normal. Whether or not the women were able to return to work prior to this six week mark is a factual determination the trial court made upon viewing the record in its entirety. Upon scrutinizing the record, we conclude that the findings of the trial court are not clearly erroneous. Dr. Lucy's and Dr. Ashwell's references to a six week leave of absence period were merely recommendations that the teachers take six weeks of maternity leave in order to further the maternal bonding process between mother and child. Where the evidence taken as a whole may support a finding of two weeks, three weeks or perhaps even four weeks of disability, the trial court's finding of three weeks of disability cannot be said to be without substantial evidentiary support. *Alumni Ass'n of Univ. v. Hart Agency, Inc.,* 283 N.W.2d 119, 121 (N.D.1979). Thus, we are not "left with a definite and firm conviction" that the trial court erroneously determined that Virginia Odland, Susan Syverson and Elaine Hegland were unable to work for a period of three weeks, not six

weeks, following the delivery of their babies and thus were entitled to sick leave for only that period of time. We therefore affirm.[3]

VANDE WALLE, PEDERSON, SAND and PAULSON, JJ., concur.

---

**3.** Virginia Odland and Susan Syverson's right to recover sick leave for a period of three weeks was neither fixed nor capable of being made certain until the day of the trial court's decision. Accordingly, they are not entitled to any interest pursuant to Section 32–03–04, N.D.C.C. Furthermore, appellant's claim that Virginia Odland should be allowed one day's pay because she lost a day of personal leave to appear at a deposition scheduled by the school district is without merit. On the day her deposition was taken, Odland only taught in the afternoon; therefore, she could have made arrangements to testify in the morning and not had to apply for personal leave time in order to testify.