Dietmar HABECK, M.D. and Dr. Dietmar Habeck, M.D., P.C., Plaintiffs and Appellees,

v.

David MacDONALD, M.D., P.C. and Dr. David MacDonald, individually, Defendants and Appellants.

Civ. No. 930320.

Supreme Court of North Dakota.

Aug. 24, 1994.

**810**

Tom P. Slorby (argued), Minot, for plaintiffs and appellees.

Robert J. Lamont (argued), of Lamont, Skowronek & Dobrovolny, Minot, for defendants and appellants.

NEUMANN, Justice.

Dr. David MacDonald and his professional corporation appeal from a judgment awarding damages to Dr. Dietmar Habeck and his professional corporation for breach of contract. We affirm.

In early 1987, MacDonald was practicing obstetrics and gynecology in Minot. Habeck was practicing in Oregon. MacDonald and Habeck entered into negotiations to have Habeck join MacDonald's practice in Minot.

The parties executed two written agreements. The first, drafted by MacDonald, provided that Habeck would relocate to Minot and be guaranteed $120,000 for the first twelve months of practice with MacDonald. This agreement contained no mention of the doctors' professional corporations, and each signed in his individual capacity. The second agreement, drafted by Habeck, provided that, after the first year of practice, MacDonald and Habeck would allocate the workload equally and would receive equal pay. A six-month written notice was required to terminate this second agreement. The doctors and their professional corporations were listed as the parties to this agreement. MacDonald's signature on the agreement does not indicate any corporate capacity.

MacDonald also orally promised on numerous occasions to provide a $30,000 pension contribution for Habeck. MacDonald asserted, however, that this promise was conditioned upon availability of funds at the end of the first year of practice. The $30,000 payment was not made.

Habeck joined MacDonald's practice in Minot on July 1, 1987. At the end of the first year of practice, a dispute arose over the meaning of the "equal pay" provision in the second agreement. Habeck did not receive equal pay, but drew $10,000 per month while the parties attempted to settle the dispute in late 1988. MacDonald terminated the parties' association on December 31, 1988, without giving the required six-month notice. Habeck was allowed to stay until February 1989 to wind up his practice.

Habeck and his professional corporation brought this action for breach of contract against MacDonald and his professional corporation, seeking damages for the breached equal pay agreement, the $30,000 pension contribution, moving expenses, and punitive damages for fraud. MacDonald counterclaimed for reimbursement of funds he claimed Habeck owed. The trial court found that MacDonald had breached the parties' agreements and awarded damages of $92,-688, including the $30,000 pension contribution. The court refused to award punitive damages or moving expenses, and dismissed MacDonald's counterclaim. MacDonald and his professional corporation appealed from the judgment.

I. CONSIDERATION

MacDonald asserts that there was no new consideration given for his oral promise to make a $30,000 pension fund contribution for Habeck. Habeck contends that his continued services, when he could have given notice and left, constituted sufficient consideration making MacDonald's promise binding.

■■■■ The existence of consideration is a question of law fully reviewable by this court. *Maragos v. Norwest Bank Minnesota, N.A.,* 507 N.W.2d 562, 565 (N.D.1993). Consideration may include any benefit to the promisor or detriment to the promisee. *First Nation-*

al Bank and Trust Co. v. Brakken, 468 N.W.2d 633, 638 (N.D.1991). Refraining from doing something that one has a legal right to do constitutes good consideration, regardless of the value of that right to the other party. Maragos v. Norwest Bank of Minnesota, N.A., supra, 507 N.W.2d at 565.

It is generally recognized that continuing to provide services, when the party is free to discontinue those services, constitutes good consideration for modification of the parties' contract. See, e.g., Pine River State Bank v. Mettille, 333 N.W.2d 622, 627 (Minn. 1983); Overmier v. Parks, 242 Neb. 458, 495 N.W.2d 620, 623 (1993); Johnson v. Morton Thiokol, Inc., 818 P.2d 997, 1000–1001 (Utah 1991); Hogue v. Cecil I. Walker Machinery Co., 189 W.Va. 348, 431 S.E.2d 687, 689 (1993). Where an employer promises to adopt or contribute to a pension plan, continued service by the employee with knowledge of the promise constitutes valid consideration. 3 Williston on Contracts § 7:38 (1992).

Although disputing the precise terms, MacDonald concedes that, on numerous occasions throughout the parties' relationship, he promised to provide a $30,000 pension contribution. In reliance upon those promises, Habeck continued in practice with MacDonald for a period of 19½ months, when he could have left earlier. Under these circumstances, Habeck's continued service constituted valid consideration for MacDonald's promise to pay $30,000.[1]

## II. EQUAL PAY PROVISION

MacDonald asserts that the equal pay provision in the agreement governing the parties' practice after July 1, 1988, was ambiguous, and should be strictly construed against Habeck, who drafted the agreement. The

trial court found no ambiguity in the equal pay provision, and neither do we.

The primary goal of the court when interpreting a contract is to give effect to the mutual intentions of the parties. National Bank of Harvey v. International Harvester Co., 421 N.W.2d 799, 803 (N.D.1988). We attempt to ascertain the parties' intent from the writing alone, if possible. Red River Human Services Foundation v. State, 477 N.W.2d 225, 227 (N.D.1991). If the language of the contract is clear and unambiguous, and the intent is apparent from its face, there is no room for further interpretation. Schmitt v. Berwick Township, 488 N.W.2d 398, 400 (N.D.1992); Stuhlmiller v. Nodak Mutual Insurance Co., 475 N.W.2d 136, 138 (N.D. 1991). An ambiguity exists only when rational arguments can be made in support of contrary positions about the meaning of a term, phrase, or clause of the contract. Schmitt v. Berwick Township, supra, 488 N.W.2d at 400. The determination whether a contract is ambiguous is a question of law. Schmitt v. Berwick Township, supra, 488 N.W.2d at 400.

The parties' second agreement provided, in pertinent part:

"Starting 7/1/88 both associates shall earn equal pay. Such equal pay shall be the result of allocating the available work load equally between the two associates. This division of work and pay may be changed from the one to one formula at a later time if both associates agree in writing."

MacDonald argues that this provision is ambiguous, asserting that the parties' true intent was to provide income on a pro rata basis, based upon the net revenues generated by each as shown through patient billings. This is not a rational construction of the contract language. The agreement clearly and unambiguously provides that "both associates shall earn equal pay," and

---

1. MacDonald also argued that enforcement of the oral promise to provide the pension contribution is barred by Section 9–09–06, N.D.C.C., which provides:

"Alteration of written contract. A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise. An oral agreement is executed within the meaning of this section whenever

the party performing has incurred a detriment which he was not obligated by the original contract to incur."

By continuing to provide services and not giving notice to terminate, as he had a right to do, Habeck incurred a detriment which he was not obligated by the original contract to incur, and the oral agreement was executed.

characterizes it as a "one to one formula." This language cannot rationally be interpreted to require pro rata income based upon revenue generated by each doctor. The only qualifying language provides for equal allocation of the "available work load;" it does not mention allocation based upon revenues. We conclude that the contract language in question is not ambiguous and was correctly construed by the trial court.

## III. PERSONAL LIABILITY

MacDonald asserts that the trial court erred in imposing personal liability upon him for breach of the agreements. MacDonald's argument is premised upon his assertion that Habeck failed to present any evidence to pierce the corporate veil and hold MacDonald personally liable for his professional corporation's debt.

MacDonald's personal liability in this case is not premised upon a piercing of the corporate veil, it is based upon the fact that he is personally a party to the contract. The relevant question is whether the parties intended that MacDonald be bound individually. *Ristvedt v. Nettum*, 311 N.W.2d 574, 577 (N.D. 1981).

■■ The contracts clearly and unambiguously show that MacDonald was to be bound individually. The first agreement, covering the first twelve months of practice, contains no mention of the corporation. It states that "[t]he undersigned . . . offers the following incentives . . ." if Habeck relocates to Minot. It is signed by MacDonald, above the designation "David L. MacDonald, M.D.," with no indication of a corporate or representative capacity.

The second agreement unambiguously states:

"David MacDonald, M.D. and his P.C. and Dietmar Habeck, M.D. and his P.C. as the associates of a OB–GYN practice in Minot, N.D. hereby agree to the following. . . ."

Again, MacDonald signed with no restrictions to a corporate or representative capacity.

■■ Where the contract unambiguously demonstrates an intent that the party be bound personally to the contract, the party is individually liable for its breach. *See Farmers & Merchants National Bank of Hatton v. Lee*, 333 N.W.2d 792, 793–794 (N.D.1983); *Cook v. Jacklitch & Sons, Inc.*, 315 N.W.2d 660, 664 (N.D.1982); Restatement (Second) of Agency §§ 322, 323 (1958). As a named party, MacDonald is personally liable for breach of the contract.

## IV. HEARSAY EVIDENCE

MacDonald asserts that the trial court erroneously admitted hearsay evidence about his prior unsuccessful business relationships with three other doctors. Lou Witmer, MacDonald's office manager, testified that three prior associates had been promised partnerships and had left after short relationships when the promised benefits did not materialize. Habeck offered this evidence to support his fraud claim, which was denied by the trial court.

■■ MacDonald draws our attention to a portion of Witmer's testimony regarding these prior relationships, asserting that Witmer was allowed to testify as to the other three doctors' statements. We find no instance where hearsay evidence was admitted over objection. MacDonald's hearsay objection was sustained to the only question which asked Witmer about something the other doctors had said. The rest of the challenged testimony was based upon Witmer's personal knowledge, as office manager, about MacDonald's business relationships with the three other doctors, or upon statements made by MacDonald himself. Statements of a party offered against that party are not hearsay. Rule 801(d)(2), N.D.R.Evid.

We conclude that the trial court did not erroneously admit hearsay evidence.

## V. FINDINGS OF FACT

MacDonald raises numerous challenges to the trial court's findings of fact. He asserts that the court erred in finding that the promise of a $30,000 pension contribution was not conditioned upon funds being available; erred in finding that the parties had not mutually agreed to abandon their second agreement; and erred in computing damages.

The trial court's findings of fact are presumed to be correct, and will be reversed on appeal only if they are clearly erroneous. *In re Estate of Helling,* 510 N.W.2d 595, 597 (N.D.1994); Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous when it has no support in the evidence or when, although some evidence exists to support it, we are left with a definite and firm conviction that a mistake has been made. *In re Estate of Helling, supra,* 510 N.W.2d at 597. The party challenging a finding of fact on appeal bears the burden of demonstrating that the finding is clearly erroneous. *McAdoo v. McAdoo,* 492 N.W.2d 66, 71 (N.D.1992); *Sateren v. Sateren,* 488 N.W.2d 631, 634 (N.D.1992).

There is conflicting evidence, and conflicting inferences to be drawn from the evidence, on each of the challenged findings of fact. MacDonald's argument that the findings are erroneous is premised primarily upon his assertion that he and his witnesses were more believable than Habeck and his witnesses. MacDonald asks us to reexamine the evidence and reassess the credibility of the various witnesses. In effect, he is seeking a trial de novo. We no longer decide factual issues de novo, but apply the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. *Crowston v. Jamestown Public School District No. 1,* 335 N.W.2d 775, 779 (N.D.1983); *Trengen v. Mongeon,* 200 N.W.2d 50, 52 (N.D.1972). Accordingly, we do not reweigh conflicts in the evidence or reassess the credibility of witnesses. The trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *Catlin v. Catlin,* 494 N.W.2d 581, 591 (N.D.1992).

We have reviewed the record on appeal and we are not definitely and firmly convinced that a mistake has been made. MacDonald has failed to carry his burden of demonstrating that the findings of fact are clearly erroneous.

The judgment of the district court is affirmed.

SANDSTROM, Acting C.J., LEVINE, J., and VERNON R. PEDERSON and RALPH J. ERICKSTAD, Surrogate Judges, concur.

VERNON R. PEDERSON and RALPH J. ERICKSTAD, Surrogate Judges, sitting in place of MESCHKE, J., and VANDE WALLE, C.J., disqualified.