2011 ND 37

**Roger HILDENBRAND, Plaintiff and Appellant**

v.

**CAPITAL RV CENTER, INC., Defendant and Appellee.**

**No. 20100118.**

Supreme Court of North Dakota.

Feb. 11, 2011.

Rudra Tamm, Bismarck, N.D., for plaintiff and appellant.

David Justin Smith, Bismarck, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Roger Hildenbrand appeals from a judgment dismissing his claims against Capital RV Center, Inc., and awarding Capital possession of and title to his 2007 Paradise Point fifth wheel camper after a jury decided Capital did not breach a contract with Hildenbrand. Hildenbrand also appeals from an order denying his post-trial motion. Limiting our review to the issues as they are presented to us, we affirm.

I

[¶ 2] In October 2008, Hildenbrand visited Capital's Bismarck business location and inquired about trading in his 2007 Paradise Point fifth wheel camper for a larger recreational vehicle. Gordy Bentz, a Capital salesman, showed Hildenbrand several recreational vehicles. Hildenbrand purchased a 2000 Monaco Dynasty Regent 40, a "diesel pusher" motor home. A tire had blown out on the front driver side of the Monaco, and that part of the vehicle showed some damage. On October 7, 2008, Hildenbrand and Bentz signed a "Retail Order." Under the retail order, Hildenbrand agreed to purchase the Monaco for $90,000 cash, plus his fifth wheel camper valued at $35,211. The retail order also included notations for "Pre delivery inspection," "5–TIRES," and "PAINT-

WORK." According to Capital, the "PAINTWORK" notation required Capital to repair the damage caused when the tire had blown out. Capital "buffed out" the damaged area but did not repaint it.

[¶ 3] About one week later, Hildenbrand returned to Capital with his camper to trade it in. Hildenbrand transferred his personal items from the camper into the Monaco. Hildenbrand was unable to take possession of the Monaco at that time because a tailpipe needed to be replaced, and Capital informed him it would take two to three weeks for that part to arrive. Hildenbrand then indicated to Capital that he wanted some improvements made to the Monaco, including painting the bottom two to three feet of the vehicle. Capital provided Hildenbrand with an estimate for that work. Hildenbrand believed he should not be charged extra for painting the vehicle because it was covered under "PAINT-WORK" referenced in the retail order.

[¶ 4] On November 25, 2008, Hildenbrand discovered "the paintwork wasn't done" and Capital had merely "appeared to buff it out or something, some of the scratches." Bentz denied the original agreement required Capital to paint the bottom three feet of the Monaco if buffing the area fixed the damage. Hildenbrand asked for the return of his camper but Capital refused because "[w]e had a deal and we lived up to our end of it, so he should live up to his end." Hildenbrand contacted an attorney, who on the following day sent Capital a letter "rescind[ing]" the retail order agreement for Capital's failure to abide by its terms. The letter noted that "nothing has been paid" and "[n]o titles have been transferred," and proposed that "[a]fter possession of the Fifth Wheel has been transferred to Mr. Hildenbrand, the parties will have no further obligations to each other."

[¶ 5] Capital refused to return the camper to Hildenbrand, resulting in Hildenbrand bringing this action in December 2008. The only count in the complaint relevant to this appeal is Hildenbrand's claim against Capital for "Conversion." Hildenbrand requested "[a]n order that [Capital] return possession of the 5th Wheel to [him]," "[m]onetary damages equal to the value of the 5th Wheel when [Capital] converted it," "[r]ent at a fair market value for [his] 5th Wheel during the time [Capital] had possession," and "[t]ermination of any agreements between the parties." Capital answered, alleging the parties had entered into a written contract, Hildenbrand had traded in his vehicle as part of the business agreement, and Capital "stands ready, willing and able to complete the repairs and stay at the original stated price or to reduce the price by $3,000.00 and leave the vehicle as is." Capital requested Hildenbrand's complaint be dismissed and "it be awarded monetary damages for the sale of the motor home" and "such other relief as the Court may deem just and proper."

[¶ 6] In November 2009, after depositions had been completed, Capital moved for summary judgment "on the grounds that a contract between Hildenbrand and Capital RV existed and Hildenbrand's obligation under that contract was never released or extinguished." Capital requested dismissal of the complaint and that "Hildenbrand be directed to complete the transaction as document[ed] by the Retail Order." Alternatively, Capital requested that it be awarded "contract damages of $32,336," representing "the price of the sales contract ($125,211), less the market value of the RV in the hands of Capital RV as of October 7, 2008 ($92,875)." Hildenbrand also moved for summary judgment. Hildenbrand acknowledged the parties had entered into an agreement and argued, "As a matter of law, based on the admissions and documents of Capital RV, summary judgment must enter in favor of Hildenbrand that Capital RV breached the Retail Order by failing to complete the Paintwork." The district court denied the motions, concluding "there are genuine issues as to material facts."

[¶ 7] The parties submitted proposed jury instructions. Hildenbrand's proposed instructions included a special verdict form asking the jury to first decide whether Hildenbrand or Capital should be awarded "[p]ossession and ownership" of the fifth wheel camper. The second question asked the jury to decide whether Hildenbrand should be awarded damages for "loss of use" of the camper and the amount of damages. The third question asked the jury to decide whether either party breached the "written agreement to convey the 2000 Monaco."

[¶ 8] Capital moved to amend its pleadings "to include the counterclaim of contract enforcement." Capital argued:

"In this matter before the Court, the original pleadings of the plaintiff did not allege breach of contract. They alleged conversion and requested cancellation of a contract. Three days before trial, the jury instructions drafted by the Court have crystallized the issues for trial as breach of contract issues. It appears the Court is also allowing the conversion claim to be tried, with the understanding that a breach of contract is necessary for the conversion damages to be established. Additionally, the Court is issuing jury instructions that allow the jury to determine the existence of the contract (See instructions on CONTRACT–MUTUAL ASSENT and REJECTION OF CONTRACT). In essence, the Court has amended the pleadings of the Plaintiff to include a breach of contract claim.

"It is the position of Capital RV that it did properly request the enforcement of the contract or contract damages. This request was included in the prayer for relief located on page 3 of the *Answer* and in the prayer for relief of the *Defendant's Brief in Support of Motion for Summary Judg[ ]ment*. The plaintiff is well aware of the position of Capital RV having defended against it in plaintiff's brief opposing summary judgment.

"Capital RV contends that it offends the notion of justice to amend the pleadings of the Plaintiff and not allow the same opportunity to the Defendant. Further, the plaintiff, by requesting cancellation of the contract, admits in its pleadings the existence of the contract. No request for rescission was properly made or granted. Now, the issue of the existence of the contract is on trial."

The district court denied the motion, concluding, "It's too close to the time of trial to allow amendment of pleadings."

[¶ 9] Hildenbrand and Capital employees testified at the jury trial. The first question on the eight-question special verdict form asked the jury: "Did Capital RV breach its contract with Mr. Hildenbrand?" The jury answered the question, "No," and in accordance with the instructions, did not answer the remaining questions. Judgment was entered dismissing Hildenbrand's complaint and ordering Hildenbrand "to surrender the unencumbered title of the 2007 Paradise Point Fifth Wheel [he] offered as partial payment of [his] contractual obligation."

[¶ 10] Hildenbrand moved for a new trial "or supplemental judgment" raising numerous issues. Hildenbrand argued that the jury should have been allowed to decide which party was entitled to possession of the fifth wheel camper, that Capital was not entitled to possession and ownership because the parties' agreement did

not include a liquidated damages clause and that Capital had not proven damages under the Uniform Commercial Code. The district court denied the motion, reasoning:

"I believe the jury was properly instructed based on the pleadings of the parties and considering the requests for instructions submitted by the parties.

"The plaintiff has the option of following through with the terms on the contract in this matter, and minimizing the financial impact he claims he is suffering.

"It is clear as a matter of law and as a matter of fact that there was a contract between the parties."

Hildenbrand appealed from the judgment and the order denying his post-trial motion. Capital did not cross-appeal.

II

[¶ 11] In view of the issues that have not been raised by the parties, we begin our analysis with a caveat.

[¶ 12] First, Hildenbrand brought this conversion action against Capital, in part, to recover possession of his fifth wheel camper. A claim and delivery action under N.D.C.C. ch. 32–07 is the proper action to recover possession of personal property. *See Dickinson v. First Nat'l Bank*, 64 N.D. 273, 285, 252 N.W. 54, 59 (1933). "An action to recover damages for conversion is entirely different from an action to recover possession of property." *More v. Western Grain Co.*, 31 N.D. 369, 380, 153 N.W. 976, 979 (1915); *see also Bernhardt v. Rummel*, 314 N.W.2d 50, 57 (N.D.1981); *Miller v. National Elevator Co.*, 32 N.D. 352, 357, 155 N.W. 871, 872 (1915); *Steidl v. Aitken*, 30 N.D. 281, 290, 152 N.W. 276, 278 (1915).

[¶ 13] Second, once Hildenbrand's action evolved into a breach of contract action, the district court should have granted Capital's motion to amend its

answer to include a counterclaim for specific performance. Under the judgment granting possession and title to the camper to Capital, Capital is forced to proceed in a manner akin to an improper splitting of a cause of action. *See Sanderson v. Walsh County*, 2006 ND 83, ¶ 9, 712 N.W.2d 842; *see also Freed v. Unruh*, 1998 ND 34, ¶ 10, 575 N.W.2d 433. "The rule against splitting causes of action exists mainly for the protection of the defendant and is intended to safeguard him against the vexations and burdens incident to a duplication or multiplication of actions to enforce a liability for which one suit would be sufficient and to avoid the costs and expenses incident to numerous suits on the same cause of action." *Ulledalen v. United States Fire Ins. Co.*, 74 N.D. 589, 619, 23 N.W.2d 856, 871 (1946). "It is a familiar doctrine 'that causes of action may not be divided, and that one who has availed himself of a part of a single claim or obligation in an action or defense is estopped thereafter from enforcing the remainder of it.'" *Jacobson v. Mutual Benefit Health & Accident Ass'n*, 73 N.D. 108, 114, 11 N.W.2d 442, 446 (1943) (quoting *John Miller Co. v. Harvey Mercantile Co.*, 45 N.D. 503, 513, 178 N.W. 802, 806 (1920)); *see also Lucas v. Porter*, 2008 ND 160, ¶ 10, 755 N.W.2d 88. As the judgment stands, issues between the parties regarding this transaction but beyond those encompassed by these pleadings remain to be resolved and further action likely will be required to resolve the parties' controversy.

[¶ 14] However, the parties have not raised these issues. "The 'law of the case' doctrine and the scope of the parties' appeal define the parameters of our review." *Hopfauf v. Hieb*, 2006 ND 72, ¶ 11 n. 2, 712 N.W.2d 333 (quoting *Tom Beuchler Constr. v. Williston*, 413 N.W.2d 336, 339 (N.D.1987)). Our discussion of the issues raised should not be interpreted as an approval of the legal posture of this case.

## III

[¶ 15] Hildenbrand argues the district court improperly deprived him of a jury trial because the court refused to ask the jury in the special verdict form which party was entitled to possession of the camper.

[¶ 16] Rule 49(a), N.D.R.Civ.P., governs special verdict forms and provides a district court with "broad discretion over the nature and scope of written questions submitted to the jury." *Moen v. Thomas*, 2004 ND 132, ¶ 14, 682 N.W.2d 738. "Although we review a trial court's use of a special verdict under the abuse-of-discretion standard, a court's exercise of discretion is necessarily based on the evidence presented and the issues involved in the case." *Nesvig v. Nesvig*, 2004 ND 37, ¶ 12, 676 N.W.2d 73. "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law." *Estate of Cashmore*, 2010 ND 159, ¶ 21, 787 N.W.2d 261. A district "court's refusal to request the jury to make a special finding upon each issue of fact was not an abuse of that discretion." *North Am. Pump Corp. v. Clay Equip. Corp.*, 199 N.W.2d 888, 898 (N.D.1972).

[¶ 17] Generally, whether a conversion has been committed is a question for the trier of fact. *See, e.g., Doeden v. Stubstad*, 2008 ND 165, ¶ 9, 755 N.W.2d 859. However, the plaintiff in a conversion action must show "he had an interest in the property at the time of the alleged conversion that entitled him to possession, if not immediately, at least at some point in the future. Absent such an interest, an action for conversion cannot lie." *Dairy Dep't v. Harvey Cheese, Inc.*, 278 N.W.2d 137, 144 (N.D.1979); *see also Jerry Harmon Motors, Inc. v. First Nat'l Bank &*

*Trust Co.,* 472 N.W.2d 748, 755 (N.D.1991); *Zimprich v. North Dakota Harvestore Systems, Inc.,* 461 N.W.2d 425, 429 (N.D. 1990). Contract provisions may establish entitlement to possession for conversion purposes. *See Napoleon Livestock Auction, Inc. v. Rohrich,* 406 N.W.2d 346, 351–52 (N.D.1987). It is not unusual for claims for conversion to arise under the same facts as claims for breach of contract. *See Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.,* 2004 ND 117, ¶ 12, 680 N.W.2d 634, and cases collected therein.

[¶ 18] Here, Capital asserted as a defense to Hildenbrand's conversion action that it was entitled to possession of the camper because the camper was a trade in under the parties' retail order agreement. It was logical for the district court to first ask the jury whether Capital breached its contract with Hildenbrand because, if it did not, Capital had the right to possession of the camper as partial payment of Hildenbrand's contractual obligation, and Hildenbrand would be unable to prevail on his conversion claim as a matter of law. Including a special verdict question asking which party was entitled to possession of the camper after the jury found no breach of contract would have served no useful purpose and could have led to jury confusion. Jury instructions "must not mislead or confuse the jury." *City of Bismarck v. Mariner Constr., Inc.,* 2006 ND 108, ¶ 14, 714 N.W.2d 484.

[¶ 19] We conclude the district court did not abuse its discretion in refusing to ask the jury on the special verdict form which party was entitled to possession of the camper.

## IV

[¶ 20] Hildenbrand argues that no contract existed between the parties because "no meeting of minds" existed about the term "paintwork" in the retail order agreement and that the district court erred in refusing to ask the jury in the special verdict form "whether there ever was a meeting of the minds."

[¶ 21] A district court "is not required to instruct the jury in the exact language sought by a party if the court's instructions correctly and adequately inform the jury of the applicable law." *Grager v. Schudar,* 2009 ND 140, ¶ 6, 770 N.W.2d 692. Here, the district court's jury instructions included seven instructions defining contract principles, including one entitled "CONTRACTS–MUTUAL CONSENT," stating in part: "One of the essential elements of a contract is the consent of the parties.... Consent is not mutual unless all the parties agree on the same thing in the same sense." *See* N.D.C.C. § 9–03–16. This instruction conveys a concept similar to a "meeting of the minds." Moreover, this Court has warned:

> "The invocation of the shorthand expression 'meeting of the minds' is more misleading than helpful in deciding contract issues. Mutual assent to a contract is indeed required, but that assent must be evidenced in some way, and if the evidence is clear enough, the contract will be binding, regardless of mental reservations or misunderstandings of one or both parties, in the absence of fraud or other recognized ground for setting aside the contract. It is the words of the contract and the manifestations of assent which govern, not the secret intentions of the parties....
>
> ....
>
> " 'Assent, in the sense of the law, is a matter of overt acts, not of inward unanimity in motives, design, or the interpretation of words.'
>
> ....
>
> "Professor Williston sums it all up by saying that the term 'meeting of the

minds' is a 'familiar cliche, still reechoing in judicial dicta,' and that is a nineteenth-century expression which seems to be contrary to the rule 'long ago settled that secret intent was immaterial, only overt acts being considered in the determination of such mutual assent' as the law requires."

*Delzer v. United Bank*, 527 N.W.2d 650, 655 n. 3 (N.D.1995) (quoting *Amann v. Frederick*, 257 N.W.2d 436, 439 (N.D. 1977)).

▄▄ [¶ 22] The parties had different interpretations about the meaning of the term "paintwork" in the retail order agreement. The district court's instructions adequately informed the jury of the applicable law, and "a jury is presumed to follow instructions provided by the court." *Moen*, 2004 ND 132, ¶ 18, 682 N.W.2d 738. We conclude the court did not abuse its discretion in refusing to ask the jury whether a "meeting of the minds" occurred.

### V

▄▄ [¶ 23] Hildenbrand argues the district court erred in awarding Capital damages in the form of possession of and title to the camper. Hildenbrand contends this damage award was improper because Capital did not allege damages, did not prove damages under the Uniform Commercial Code and is not entitled to liquidated damages under the retail order agreement.

▄▄ [¶ 24] The district court did not award Capital any damages. In the court's ruling on Hildenbrand's post-trial motion, the court simply determined Capital is entitled to possession of and title to the camper under the parties' retail order agreement. Although Capital did not request an order that Hildenbrand transfer title to the fifth wheel camper, a "failure to explicitly request specific equitable relief is

not fatal" to a court's grant of equitable relief. *Allied Group Mortgage Corp. v. Dewing*, 498 N.W.2d 196, 198 (N.D.Ct.App. 1993). In *Harrington v. Harrington*, 365 N.W.2d 552, 556–57 (N.D.1985), the district court ordered the plaintiff to satisfy two mortgages even though the defendant's answer did not contain a counterclaim seeking specific performance. This Court held the issue was tried by the express or implied consent of the parties, and said, "The district court had equitable jurisdiction to provide a remedy where none exists at law, even if the parties have not specifically requested an equitable remedy, whenever the pleadings sufficiently give notice of the party's right to relief and demand for judgment pursuant to NDRCivP 8(c)." *Harrington*, at 557; *see also Aho v. Maragos*, 2000 ND 14, ¶¶ 6–8, 605 N.W.2d 161 (court did not err in ordering plaintiffs to execute an oil and gas lease even though defendant did not seek that relief in counterclaim where the issue was tried by the consent of the parties).

[¶ 25] In its answer, Capital requested "such other relief as the Court may deem just and proper." *See First Nat'l Bank and Trust Co. v. Scherr*, 456 N.W.2d 531, 534 n. 5 (N.D.1990) (although prayer for relief did not request reformation but sought " 'such other and further relief as [the] Court may deem just and proper,' " district court had equitable jurisdiction to provide a remedy); *United Accounts, Inc. v. Larson*, 121 N.W.2d 628, 633 (N.D.1963) (prayer for "such other and further relief as the court may deem just" is "sufficiently broad to require the court, when the controversy was submitted to it, to take jurisdiction necessary to do complete justice between the parties"); *Dewing*, 498 N.W.2d at 198 (prayer for " 'such other and further relief as the Court may deem just and equitable' " allowed court to order reinstatement of mortgage even though it

was not specifically requested). In its motion for summary judgment, Capital requested that "Hildenbrand be directed to complete the transaction as document[ed] by the Retail Order." In its motion to amend the pleadings, Capital stressed that it had been requesting "enforcement of the contract" in these proceedings and that Hildenbrand "is well aware of the position of Capital RV having defended against it in [his] brief opposing summary judgment." Indeed, Hildenbrand requested a question on the special verdict form which asked the jury to decide whether Hildenbrand or Capital should be awarded "[p]ossession and ownership" of the camper.

[¶ 26] Under these circumstances, we conclude the district court did not err in ordering Hildenbrand to surrender the camper title to Capital.

### VI

[¶ 27] The judgment and post-trial order are affirmed.

[¶ 28] GERALD W. VANDE WALLE, C.J., ALLAN L. SCHMALENBERGER, S.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 29] The Honorable ALLAN L. SCHMALENBERGER, S.J., sitting in place of SANDSTROM, J., disqualified.